14 189
88 393

## NESTOR CLAY'S HEIRS V. NATHAN HOLBERT.

Assisting witnesses were not essential to the validity of the acts of possession extended by Alcaldes and Commissioners, in cases of sales under the 24th Article of the law of colonization of the 24th March, 1825 ; the object of such witnesses was to authenticate the act, so that it would prove itself ; in the absence of them, the genuineness of the document may be proved according to the general principles of evidence.

Concessions in sale, under the 24th Article of the colonization law of the 24th March, 1825, were susceptible of alienation at any time, the purchaser remaining bound to perform the conditions.

See this case as to a mistake of name in one part of a document, corrected by the context.

In a grant in sale, of eleven leagues of land, under the 24th Article of the colonization law of the 24th March, 1825, the classification by the commissioner was defective, a blank was left for the purchase money, and there was no proof of payment of any part of the purchase money ; the title was sustained.

Appeal from Burleson. Action of trespass to try title, by appellants against appellee, commenced in Milam county; venue changed to Burleson. Plaintiff's title as follows :

Petition to the Governor by Juan Jose Acosta, dated Nacogdoches, Sept. 28, 1830, for a sale of eleven sitios of land, "with " the prerogative of taking them united or separated, as may " be more proper for my interest, remaining bound to pay the " dues imposed by the law of colonization of the 24th March, " in the 22d Article."

Concession " according to the 24th Article of the law of colonization of the 24th of March, 1825," of eleven sitios of land, as prayed ; the Commissioner or Alcalde " will put him " in possession of the lands and issue the corresponding titles, " previously classifying the class and quantity of them, to show " the amount that he is bound to pay to the State, for which " payment I concede to him the terms designated in the 22d " Article of the aforesaid law." Dated Leona Vicario, February 11th, 1831.

Power of Attorney from Acosta to William H. Smith, dated Nacogdoches, July 6th, 1832, to select, take possession, and pay the Government for, the said lands, " and after having complied " with the requirements of the law in the matter, to sell them " according to the 21st Article of the law of colonization of the " 24th of March, 1825," &c.

Then followed the application of Wm. H. Smith, " attorney of the citizen Juan Jose Acosta," to the Alcalde of the village of Austin, to put him in possession of the lands, dated September 19th, 1833.

Order of the Alcalde, without date, referring the application to the empresarios, and in the event of their approbation, ordering a survey by the principal and scientific surveyor, Francis W. Johnson.

Approbation of the empresarios, by Samuel M. Williams, by himself and as attorney for Austin, dated September 20th, 1833.

Report of the survey by Johnson commencing : " Mr. Alcalde " and Commissioner ; the lands that I have surveyed in virtue " of your foregoing decree, for the attorney of Juan Jose Acosta, " William H. Smith, are situated in the following form." Then followed a description of the land, being in one survey of eight sitios on San Andres river, adjoining lands of Justo Liendo, one of two sitios on the Brazos river, and another of one league, also on the Brazos. The report concluded as follows : " com- " pleting the limits of the eleven sitios of land that you ordered " me to survey for the said attorney of the citizen Juan Justo " Liendo."

Then followed the act of possession dated September 30th, 1834. In that part where the price should have been stated, there was a blank as follows :

" The surveyor believes said land to belong to the temporal " class in one sitio and 7¼ labors, and in seven sitios and nine- " teen and three-fourths labors to the pasture class.

" I, the aforesaid Alcalde and Commissioner, in exercise of " the authority conferred on me by the law, declare and classify

Clay v. Holbert.

"it, according to which he is bound to pay to the State the "amount of one thousand                according to the provi- "sions of the 21st Article of the law of colonization of the 24th "March, 1825, in the terms designated in 22d Article of the "same law," &c.   The act of possession concluded as follows : "Given in the village of San Felipe de Austin, on the date "above mentioned.

                                      "L. LeSASSIER,
    "Assisting,                              Assisting.
     " C. C. GIVENS."

The plaintiffs proved the handwriting of LeSassier, Wil- liams, Givens and Johnson.

Deed from Wm. H. Smith, attorney in fact of Juan Jose Acosta, to James B. Miller, administrator of Nestor Clay, de- ceased, dated November 14th, 1836, for five and a half leagues.

Deed from James B. Miller to the heirs of Nestor Clay by name, dated September 24th, 1849.


*R. Hughes*, for appellants.   The title of appellants is said to be null, for the want of the two witnesses therein named.   That article in translation is as follows : " All public instruments of "possession and testimonios, signed by the commissioner, shall "be authenticated by two witnesses of assistance."   (Laws and Decrees, 73.)

It will be observed that the translation given is not like that in the book.   That in the book is : "All public instruments of "possession, and attested copies signed by the commissioner, "shall be attested by two assisting witnesses."   Observe the difference between the two, founded on an ignorance of the distinction between the attesting witness of the Common, and the instrumental witness of the Spanish Law.   The words sub- stituted are, by no means, equivalent to those which are in the corrected translation.   Though usual for the assisting witnesses to sign, after the signing by the officer, they might do that re- quired, by inserting their names in the instrument ; and the word " *autorizados*" can, under no circumstances, be translated

"attested," but should be rendered, "authenticated." The word attested indicates, subscribed as a witness, so that the subscriber may testify when called on, as to the execution of the instrument ; and the word "*autorizados*" should be translated "authenticated," made worthy of credit, proved by the mere act of assistance of the witnesses.  The translation, then, which we have given is the correct one.  But the title was not authenticated, and the consequence, as insisted upon on the other side, is, that, in Common Law language, it is void.  This would be a strange conclusion.  A thing is done or made in perfect conformity to all the requirements of the law ; by reason of that conformity, a right vests.  After the issuance thus of the title, signed by the commissioner, to make it of itself evidence, in other words, to make it authentic, it is to be authenticated by two witnesses of assistance.  This is not done, and we would say, the consequence would be, not that the instrument is null, for the authentication is no part of it ; but that, that which was to make proof, not having been done, there is no authentication, and the attempted authentication is null.

*Febrero* says, that where certain solemnities are prescribed, as a substantial form to be pursued in the doing an act, and these are omitted, the act wants validity and substance.  (1 Febrero Mexicano, 14.)  This has no application, for the prescribed solemnity of the 27th Article, is no part of the solemnities prescribed for the title ; that being perfected by the commissioner by signing it.  Again, Escriche says in regard to formalities, " They are the conditions, terms and· expressions " which are required, in order that an act or public instru- " ment may be valid and ˉperfect." (Escriche's Dic. of Juris. FORMALIDADEZ.)

These conditions, terms and expressions, are those which are required by the 4th and 8th Article of the instructions, and are all essential to the validity of the title, as we have shown, and if any had been wanting, the title would have been null ; for, according to Escriche, those formalities are essential, which are required by law or by use, in such manner that their omission

produces nullity ; as when the law prescribes something under a penalty of nullity, or is conceived in terms prohibitive or negative, or is treated as a matter of strict law.   (Ib.)

The matter insisted upon as producing the nullity, it is admitted is a matter of strict law.   But it has no application to the title, for the act to be done is authentication, and is omitted and leaves the title without proof to render it authentic.   But it is contended that the solemnity of authentication is a solemnity prescribed for the doing the act, and having been omitted, the title is null.   Were it admitted that the solemnity omitted, was part of the substantial form prescribed for the execution of the title, still the omission of it would not produce nullity ; because, by the 28th Article of the same instructions, the Commissioner was to be held responsible personally for everything performed by him, in violation of the colonization law, and those instructions.   (Laws and Decrees, 73.)   *Inclusio unius exclusio est alterius*, is a sound maxim ; and one penalty being affixed, we take it all others are excluded.

The ground upon which, no doubt, it is insisted that the instrument is null, by reason of the want of the two witnesses, is the requirements of the law on the subject of the execution of instruments by Notaries Public ; and that the rules and penalties for them are to apply to instruments under the colonization laws, and the instructions to Commissioners.

It is a general rule of the Spanish Law, that legislation is not to be made as to things which seldom occur, but they are to be decided by other similar cases provided by law.   (Rule 36, 2 Moreau & Carlton's Partidas, 1248.)   And this rule is applied under the Spanish system, in such manner as that cases not especially provided for are determined by the rules provided for similar cases.   (1 Febrero Mexicano, 73–4.)   And we admit that if there is a similarity in the provisions made as to titles of possession issued under the colonization laws to instruments executed before Notaries according to the Spanish Law, the rule as to the latter is to govern the former.   As to some of the provisions there is a similarity.   But in the particular

in which it is attempted to apply the rule there is no similarity. The two instruments are public, but for different reasons. That executed by the Commissioner is public because executed by a public officer in regard to the duties of his office. (Escriche, INSTRUMENTO, Translation 2, p. 2.) The other has the like character because it contains a disposition or agreement executed before a Notary Public in conformity to law. (Id. 5.)

As to the notarial public instrument, that it may be held for authentic and in conformity to law, many circumstances are to concur, and unless they concur, the instrument will neither be public or authentic. (Escriche, Dic. Juris, INSTRUMENTO PUBLICO, Translation No. 2, p. 5 to 20 inclusive.) We find in the enumeration a requisition as to two witnesses, which must be complied with, or the instrument has not credit or it is null, and the argument is, that a like requirement as to the title of possession is made, and when it is not complied with the like penalty follows. All of the requirements as to witnesses to notarial instruments are of substance, for the reason, that said witnesses are to prove the instrument when questioned, and to testify as to the context of the instrument, when the instrument may be null. They were not only to be witnesses to the execution of the instrument, but also to the agreement which was to be evidenced by it; for Escriche says, "neither shall a con-" tract cease to be valid by reason of the nullity of the instru-" ment provided its context be proved in some other manner," (Id. Translatian No. 2, p. 42,) and for this purpose, with other purposes, the witnesses are intended.

All this has no application to the instrument of title to be issued under the colonization laws, and the instructions to Commissioners, of 1827. Such instrument does not contain an agreement between private parties, but made public, by reason of its execution before a public officer, but is executed by a public officer in regard to the duties of his office. Nor, in case the instrument is null, can proof of the context be made by the witnesses, because all the essential prerequisites and formalities depend upon written evidence, as the concession, the

order of survey and the survey. The notarial public instrument is to be authenticated, as well as made public by the notarial rubric and signature. (Translation No. 2, p. 18, &c.) While that issued by the Commissioner is public by his signature, but is not to be authenticated by the Commissioner, but by two witnesses of assistance.

These distinctions do certainly make a difference in the requirements, in regard to the consequences of the want of the witnesses. In regard to one, the witnesses are an essential part of the due execution of the instrument, indispensible to its existence; while, as to the other, the requirement of the witnesses is a mode of proof, a mere formulary, by which, when complied with, the instrument of itself is full proof. With regard to the former, the want of such witnesses renders the instrument null, and as to the latter, on principle, it would seem that the authentication is null; but being no part of the due execution of the instrument, the want of such authentication cannot affect the validity of the instrument, the act to be done, which is omitted, being the proof of the instrument after its due execution, instead of a formulary required in the execution.

But is that which is required by the 27th Article, that which we have referred to, "authentication?" The word used is "*autorizados*" which, when applied to public instruments, is defined thus: "legalized in due form," and the word *legalizar* "to authorize an instrument," certifying in authentic form to its verity and legality; and *legalizacion*, the declaration which a public officer gives, by writing at the foot of an instrument, attesting the truth of the signatures placed in it, as well as the qualities of the persons who have made and executed it, so that he may give it credit in all its parts. Upon these definitions we have translated the word mentioned, authenticated, as we believe, correctly. But is the authentication to be by the witnesses or by the Notary with the assistance of the witnesses? The former clearly. The language is *autorizados con dos testigos de asistencia*. *Con*, as we find by an examination of Newman & Barretti's Dictionary, may be translated "with" or "by." The

latter is correct, because it must be authenticated with the assisting witness, by the Notary; for the Article first speaks of an instrument signed by the Commissioner, and that so signed is to be authenticated; that is, proved by the witness; for the act done, a part of which is the signature by the Commissioner, and which is very material, is to be proved by the authentication. But the instrument was not authenticated by the witnesses, and the consequence is, it wants credit. Is there any means by which this credit can be given to it?

The instrument executed before a Notary Public was to be extended, that is, the contract was to be written out at full length by the Notary and rubricated and signed by him and also by the parties and the witnesses, or their names inserted in the instrument, and then was to be placed in the book of protocols or register, where it was to remain; and Escriche says, that, until so deposited, no copy could be given, under the penalty of the nullity of the copy, loss of office by the Notary, and incapacity to hold another, and obligation to pay the damages resulting. (Translation 2, p. 18.) The requirement was, like the other requirements, a solemnity of the substantial form, and without it the instrument would not prevail. But yet this difficulty might be avoided and the instrument set up. For it is said, " though a public instrument may be null or invalid, " by reason of a defect of solemnity or of form, by this it is not " intended that the disposition or obligation contained in it be- " comes extinct, or loses its force, which has to be executed " in spite of everything, if it be that it exists of itself and is " proved by the other means the law establishes." For, on principle, public instuments are not required for the formation of the contract, but only for its proof, in such manner that if this proof can be had by other means, the obligation will not be annulled. (Translation No. 2, p. 41–2–3.) And accordingly we find strong instances where the contract is maintained and instrument established, though in fact no instrument was ever legally executed.

Escriche says, " When the Notary has died and the matrix

"writing does not appear in the protocol, by reason of being "lost or abstracted, or other cause, and he who is interested in "it, has in his possession the original copy, he can present it to "the Judge, desiring that after the proof of the rubric and the "signature and receiving information of the execution of the in- "strument, as well through the instrumental witnesses, if liv- "ing, as the fidelity, good character and neglect of the Notary "before whom it was passed, it may be commanded to be pro- "tocoled, and corresponding copies given of it, in which view "the Judge conforming to the application and performing said "acts, does in fact, by the acts done, protocol the original writ- "ing, which thenceforward shall serve for the matrix or regis- "ter, giving copy of the whole to those interested." (Transla- tion No. 2, p. 27.)

We have previously seen that the instrument not being exe- cuted and deposited in the register, the original copy or testi- monio was null, the reason for which is obvious: there could be nothing from which to take the copy ; but notwithstanding this, the agreement was not null, and there being proof of it, the instrument being in fact executed before the Notary and authenticated by him, but in the testimonio only, the instrument would be maintained, provided its execution was proved in the form prescribed, and being fully proved would be protocoled, and by this means the authentic character would be given to it.

Now if in this case of the want of authenticity, by reason of the absence of one of the solemnities prescribed for a substan- tial form, the instrument can be made authentic by other means than the formulary prescribed, can any reason be given why in another case of the want of authenticity, by reason of the ab- sence of another formulary, that the instrument may not be made authentic by other than the formulary omitted? The title in question was required to be authenticated by two wit- nesses of assistance, one only assisted, and the consequence is that there is no authentication ; but, as required by the 4th and 8th Articles of the instructions, the instrument is dis- patched, signed by the Commissioner, which makes it a public

instrument, and it must be made authentic, in like manner as in the case cited from Escriche, by proof of its execution by the Commissioner. This has been done and the instrument is evidence.

The case of Titus v. Kimbro, (8 Tex. R. 210) was where the title, though written and placed in the register of protocols, was not signed by the Commissioner, but he issued a testimonio, in apparent conformity to the 8th and 27th Articles of the instructions, and it was insisted that the title was null, because there was no original or protocol, from which the testimonio could be taken ; but it was determined that the title was not null, it having been proved that the testimonio was issued by the Commissioner. It was that testimonio which was to serve the party for a title, and having been delivered to him was in fact a title, though there was no original from which to copy it ; and though as required by the instructions, the original was not made public by being signed by the Commissioner, nor made authentic by two witnesses of assistance, after proof of the execution of the testimonio, both the public character and authenticity were attributed to it in like manner as authenticity was given in the case cited from Escriche. This determination is clearly sustained by the instance as to notarial instruments cited.

The instrument in Titus v. Kimbro was not protocoled, because the sovereignty had passed away, under which it had been executed, and there was no one who could make such a protocol. But the case in Escriche having been protocoled because the instrument was in fact issued, the protocol was not made to set up the instrument in fact, but to make record evidence of it, from which other copies when necessary might be made, and for other purposes. If it had not been protocoled, it could have been used after proof of its execution, as it was in Titus v. Kimbro, and so here.

*Lewis & Barber*, for appellee. The sale from Acosta to Smith took place before the issuance of the grant, and is void. (White's Nov. Rec. p. 607, Art. 28.)

The blanks in the face of the grant referred to show a non-compliance with the law, and that no consideration was paid for the land. And as the face of the deed does not furnish even *prima facie* proof of the payment of the purchase money, but rather negatives that idea, the proof of payment ought to have been supplied, if it was competent for them to do so, in some other manner.

The concession shows that there was but one witness assisting L. LeSassier, when the law required two. (L. of C. and Tex. 73 ; White Nov. Rec. vol. 1, p. —.) " A deed does not produce faith, if devoid of any solemnity." (1 White, Nov. Rec. p. 297.) "All public instruments of possession and attested copies issued by the Commissioner, shall be attested by two witnesses." (Instructions to the Commissioner, 4th Sept. 1827 ; Leverett v. LeBreton, 8 Martin, N. S. 501 ; Cond. La. R. 597 ; 2 White's Nov. Rec. p. 239.)

But it is contended that our English translation is incorrect. To this it is sufficient to answer that the translations used at the time the law was in force are better authority than the translations of private individuals at the present day. At least they were better understood. Surely, we ought not to disregard them unless the error is palpable. And the difference in the signification of the words authentic, authentical and attest is, when applied to this case, so trivial as not to justify criticism. (Webster.) And whether we use one or the other of these words as the true translation, the law requires two witnesses to attest or authenticate such instruments, and there is no law for dispensing with them in any case. But if you admit that the agent of the Government might dispense with one of the witnesses, you admit that one of the required legal formalities might be dispensed with. If so, why not all ? Where will you stop ? They were all restrictions placed on the agent by the power conferring the authority ; and whether they were wisely imposed cannot now be open to judicial investigation.

PER CURIAM. This was a suit to recover land. The facts

were agreed upon, and it was agreed that if the Judge should
be of the opinion, that the law of the case was with the plain-
tiffs, that he should give judgment that they should have the
land sued for and one cent damage ; and if he should believe
the law to be against the plaintiffs, he should give judgment
accordingly against them.   The Judge gave a judgment in
favor of the defendant, from which judgment the plaintiffs ap-
pealed.

The title claimed by the plaintiffs was for a part of an eleven
league grant to a Mexican, by purchase.   The title is in the
usual form in such cases.   The petition of the grantee to the
Governor for the purchase of that quantity of land, and the
grant of the Governor, then the petition of the grantee to the
Alcalde of the jurisdiction of San Felipe de Austin, as special
Commissioner, to order the lands that had been designated to
be surveyed, the reference of the application to Austin and
Williams, within whose empressa the lands were situated, then
comes the order of survey, the Surveyor's return, and the title
of possession extended by the special Commissioner, regular in
every respect, with the exception of there being but one assist-
ing witness to the Commissioner's title of possession.

The only question, we believe, that can be raised against the
title of the plaintiffs is this want of two assisting witnesses to
the title of possession.   Does this want of two witnesses of as-
sistance render the title of the plaintiffs absolutely void ?   Or,
does it only render the authentication void, and leave the title
open to be proven by other witnesses ?   The latter is contended
by the appellants to have been the law then in force, and the
law that must govern the case.

It is insisted that the legal effect of having two witnesses of
assistance is, that it would then be full proof, *per se*, of the exe-
cution of the title by the Commissioner, but that the want of
the two witnesses assisting only imposes on the grantee the ob-
ligation of proving the fact of the execution, by other evidence.
(See Escriche Dic. Juris, *verbo* INST. PUB. VIII.)

For the appellee, however, it is said that the Instructions to

the Commissioner require that in the execution of the title there shall be two assisting witnesses ; and this is, perhaps, the only ground of objection to the proof *aliunde*, of its execution.

The Instructions are of the date of 4th September, A. D. 1827, and, so far as material to the present enquiry, are contained in Art. 27, as follows, i. e. " *Todos los instrumentos* "*publicos de posesion y testimonios, que firme el Comisionado* " *seran autorizados con dos testigos de asistencia;*" which is translated by the compiler of the Laws and Decrees of Coahuila and Texas, " All public instruments of possession and attested " copies, signed by the Commissioner, shall be attested by two "assisting witnesses." It has been insisted on the part of the appellants, that the translation is not accurate, and that if correctly translated it would read, " all public instruments of pos- " session and testimonios, signed by the Commissioner, shall be " authenticated by two witnesses of assistance." The difference is in this, that the first translation given is that the one makes the witnesses to the execution of the instrument, but does not authenticate it so as to make it full proof, *per se*, and that the other is not merely to attest the execution, but full authentication. If the law positively requires a certain number of witnesses to the execution of the contract, the want of that number might annul the instrument ; but if it is only to authenticate, this does not impair the contract executed, nor its execution, but would only be a defect in the authentication, but would not forbid a resort to other evidence to authenticate it ; such as proof by persons who either saw the transaction, or were familiar with the handwriting of the person who had executed the instrument. If, however, the law of the contract, that is, at the time it was entered into, had declared that it should be void, if not witnessed by the given number of witnesses, as in some States, a sale of land by deed is required to be witnessed by the legal number or it will be void, or as under some Statutes of wills, the will is void unless witnessed by the required number of witnesses, it would be held void. There was no law in force at the time, declaring the nullity of the title unless

it was authenticated by two assisting witnesses. The Instructions to the Commissioner do not assume that such shall be the consequences of a failure on the part of the Commissioner to have his title of possession so authenticated. The authentication was designed for the benefit of the purchaser, to relieve him from the necessity of proving the execution, and the Commissioner was required to have the title so authenticated for the purchaser, under, not the penalty of nullity, (that would have fallen on the purchaser,) but under the personal responsibility of the Commissioner. He was responsible to the Government, and perhaps would have been responsible to the purchaser, for any inconvenience or loss which he might sustain, for want of the authentication. The 28th, and last Article of the Instructions to the Commissioner is as follows: "The Commissioner "shall be personally responsible for all acts and provisions by "him effected or performed in violation of the colonization law "and these Instructions." (Laws and Dec. Coahuila and Texas, p. 72.) That a defect of authentication can be supplied by other evidence, see authority before referred to from Escriche.

It is believed that this being a sale of land, not made by the Commissioner, but by the Executive, and so far as the right of the purchaser is concerned, the Commissioner's duty did not begin until after the right had been acquired by purchase from the State, and it relates then mainly to the reference to a Surveyor, and his approval of the survey, and the putting the purchaser in possession, and his title was only evidence of the right acquired by the purchaser, and did not give or convey the right, because the right had accrued by the act of the State Executive. And in this view of the question, is found an answer to the point assumed, that the purchaser's title was inchoate, from the defect in the authentication of the sale, and that it could only be supplied by the action of the political authority. If the purchase had been conditional, and something left to be done by the Government, the right would have been inchoate; but where there is nothing left for the Government to do, the right is perfect, although the purchaser may not be in

possession of an authentication of the evidence of such right, but is in possession of a valid title of possession from the Commissioner. Such is this case. There was nothing to be done; no reference to a superior authority for approval, upon the contingency of which the right depended. The title, being defective in not making full proof, *per se*, was nevertheless a valid title.

When the Commissioner gave the title of possession to the purchaser, the right of the purchase was perfect, and became so by the evidence of the particular land purchased, although the authentication of the right was not made. This was a mere matter of evidence, and could be supplied. The distinction between a contract giving or creating a right, and the execution or authentication of the evidence of a right, may be illustrated by the instrumental witnesses to a notarial contract, and the assisting witness to a paper that was not the contract, but only evidence of the contract. The instrumental witness to a notarial contract must know the parties ; must know what was the subject of the contract. They are so far parties to the contract that they are required to see that it is correctly entered by the Notary. This is essential to the contract itself. (See Escriche, *verbo* INSTRUMENTO, 1 § 3.) Not so assisting witnesses merely to the execution of the instrument, that is, that the party did put his name or rubric ; this may be done without any knowledge of the witnesses of either the persons to the contract or the subject matter. The necessity of the instrumental witnesses to a notarial contract may exist, and the act notarial may be void without them, because they are constituents in the making of the contract, whilst the same result would not follow from the want of the assisting witnesses to the title issued of possession in this case. We believe that it was competent for the plaintiffs to prove the execution of the Commissioner's title of possession, by resorting to other testimony, without relying upon the defective authentication, and that it was so proven.

We will give a passing notice to another objection taken by the appellee to the appellants' title : " That the land conceded

was sold before the grant had been obtained." It is a suffi-cient answer to this objection, that the sale was not prohibited. Art. 27 of the Colonization Law, (L. and D. C. and T. p. 20,) expressly authorizes "those who have acquired land by pur-"chase, to alienate the same at any time, provided the succes-"sor obligates himself to cultivate the same within the same "term as was obligatory on the part of the original, likewise "reckoning the term from the date of the primitive titles." The primitive title is the concession from the Executive of the State, and it was competent for the purchaser to alienate at any time after his primitive title.

The mistakes of courses and of the name of Liendo for Acosta would have been explained by the report of the field notes, if taken altogether, without any other explanatory proof; but if proof had been necessary, it is very satisfactorily shown by the testimony of the Surveyor. There was no question, of any sort of doubt, raised upon the record, but the one first no-ticed ; and we think the evidence fully made out the title of the plaintiffs to the land sued for, and that the judgment ought to have been given under the agreement and in conformity with it, for the plaintiff. The judgment is therefore reversed, and rendered in favor of the plaintiffs, according to the agree-ment made a part of the record, &c., &c.

Reversed and re-formed.