### R. H. GRIMES V. THE CORPORATION OF BASTROP.

By the instructions of the Congress of Coahuila and Texas, of the 4th of September, 1827, the commissioners appointed to extend titles were directed to execute the titles extended by them with the like solemnities that were prescribed by law for the execution of authentic acts; and if this was not done, the title could not be read in evidence until its execution was duly proved.

A title executed by a commissioner without either instrumental or assisting witnesses was not an authentic act; and the admission in evidence of such a title, without proof of its execution by the commissioner, was erroneous.

In this case, a public municipal corporation, in order to raise the presumption of a grant to it of its town tract, relied upon long continued claim, with the exercise of acts of ownership over the land, and offered in evidence a certified copy of an incomplete grant made by a commissioner, defective by reason of the omission of the description of the land granted: *Held*, that if the grant was otherwise unobjectionable, it was admissible as a fact or circumstance in connection with the claim to and the exercise of ownership over the land, from which the presumption of a grant was sought to be presumed.

A copy of the field notes of a survey can not be so authenticated as to make it admissible evidence, by an *ex parte* affidavit to its correctness of the person who had been the surveyor by whom the original survey and field notes were made, such person not being the legal custodian of the original from which the copy purports to have been made.

Nor would such a copy be aided by the testimony of a witness that, to the best of his knowledge and belief, it corresponded with another copy of the field notes which the witness had long previously obtained from the person who made the survey.

The court below instructed the jury that if the corporation "had claimed, *or* exercised acts of ownership or control" over the land from June, 1832, until the commencement of this suit in 1857, then the title of the corporation was complete and valid to the extent of the boundaries of the survey made for it in 1832: *Held*, that the instruction was erroneous, being framed in the alternative, whereby the presumption of a grant was made to depend upon the continuous claim of the land by the corporation.

The State having by an act of the legislature recognized the title of the town of Bastrop to the four leagues of land claimed by it, such Act operates from its date a legislative grant of the land then claimed by the town, and would go in aid of the presumption of a pre-existing grant.

See this case with reference to the doctrine of the presumption of grants.

APPEAL from Bastrop. Tried below before the Hon. Thomas J. Devine.

The corporation of Bastrop instituted this suit against the appellant for the recovery of damages incurred by the cutting and carrying away of pine timber from the town tract.

Upon the trial, the case resolved itself into a question of boundaries, the defendant claiming that the land from which he obtained the timber was within his own tract. The plaintiff offered in evidence an incomplete or imperfect grant made to the civil authorities of the town by Miguel Arciniega, the commissioner for the extension of titles within Austin's Little Colony, of date June 8th, 1832; to which the defendant objected because no description of the land was contained in the grant, and because there was neither the signatures of instrumental or assisting witnesses to it, nor was its execution by the commissioner proved. The objection was overruled and the grant admitted.

Having proved an ineffectual search for the original field notes of the survey of the town tract of four leagues, the plaintiff introduced T. H. Mays, who testified that a paper shown him, purporting to be a copy of the field notes, corresponded with a copy of the field notes of the Bastrop town tract which he had got in 1839 from S P. Brown, the surveyor of the colony in 1831 and 1832. On this basis, the plaintiff offered the copy shown to the witness. It was signed and sworn to by Brown before a notary in 1848, but did not assign any date to the survey itself. The defendant objected to the introduction of this copy; 1st, because

it was not properly authenticated; 2d, it came from no public office or officer; 3d, no original was shown ever to have existed; and 4th, because it was not admissible to show title in plaintiff. The objections were overruled, and the evidence admitted.

The other facts appear in the opinion.

There was a verdict and judgment in favor of the plaintiff for $375, a new trial refused, and defendant appealed.

*Hancock & West*, for appellant.

*C. C. & A. D. McGinnis*, for appellee.

Moore, J. The incomplete or blank grant by Arciniega, a certified copy of which, from the General Land Office, was read in evidence by the appellee, was doubtless neither received by the court or offered by appellee as of itself evidence of title to the land upon which the trespass complained of was alleged to have been committed. It was manifestly offered and relied upon merely as an additional fact, or circumstance in connection with appellee's claim to and acts of ownership over the land, from which it was insisted a grant of it should be presumed. In this view, and for this purpose, we think, if otherwise unobjectionable, it was properly admissible; and that appellant's first ground of objection to it was consequently not well taken. But appellant also objected to its admissibility because it was not executed by Arciniega with either instrumental or assisting witnesses; and his signature to it was not proved to be genuine. This objection should have been sustained. It has been repeatedly decided by this court that by the instructions of September 4th, 1827, commissioners were directed to execute the titles extended by them with the like solemnities that were prescribed by law for the execution of authentic acts; and if this was not done the title could not be received as evidence until its execution had been duly proved. (Clay v. Holbert, 14 Tex., 189; Ruis v. Chambers, 15 Tex., 586; Andrews v. Marshall, Austin Term, 1862.)

The court most manifestly erred in overruling appellant's objections to the field notes sworn to by the surveyor Brown in 1848.

It cannot for a moment be maintained that the *ex parte* affidavit of Brown gave to them any authenticity. This paper, which he swears is a copy of the original field notes, appears to have been made by him (according to the date of the affidavit, which is the only evidence of the time when the copy was made,) more than fifteen years after the making of the survey, as appellee claims. He had no authority to give authentic copies of the original field notes, if they were still in his possession. Nor can it be presumed that they were then in his possession, as by law they were required to have been returned years before to the General Land Office. Nor does this copy derive any additional authenticity, as evidence, from the testimony of the witness, Mays, who was examined upon the stand. It is true that he says, that to the best of his knowledge and belief this copy corresponds with and embraces the same land that another copy of ·the field notes of appellee's survey did, which he got from Brown in 1839. This, if such was appellee's object, falls far short of the common law rule, which authorizes the use of a sworn copy of an instrument when the original cannot be had; but if this were not so, it would not still be sufficiently authenticated to have been received as evidence, for it is only a sworn copy of a copy, not itself authenticated even by Brown's *ex parte* affidavit.

The witness, Mays, appears to have been present when the original survey by Brown was made, and was examined in regard to it. We do not doubt that he might, if he desired, use this or any other paper that would have given him any aid in refreshing his memory; but then such paper would only have become evidence in so far as his testimony, after his memory was refreshed by it, should have made it so. But here this was not the object or purpose which it was intended it should subserve. We may, also, remark, that had it been shown, in connection with the other facts, that Brown was dead, and the copies of the field notes made by him, as well as his statements about the survey, had been offered with that view, it would be a question worthy of consideration whether they could not have been used, as the declarations of a deceased party, for the purpose of showing ancient boundaries. But no question of this sort arises in the present attitude of the

case; and it is only suggested that, if it should do so hereafter, it may be properly presented ffor our consideration.

The court instructed the jury that, "if appellee had *claimed* or exercised acts of ownership or control" over the four leagues of land referred to in the imperfect title, from its date, June 8th, 1832, until the commencement of this suit, and the four leagues were the same as those delineated on the plat of survey executed by Brown, the appellee's title thereto was complete and valid. It will be seen that the charge is framed in the alternative, and the presumption of a grant was thereby made to depend upon the continuous claim of the land by appellee. This is clearly erroneous. The instruction was no doubt hastily drawn by the learned and able judge by whom it was given, and does not accurately express the idea that he intended to convey.

The doctrine of presumed grants has on several occasions been discussed in this court; and it must now be admitted as fully established on principles that cannot be controverted, that, under proper circumstances, a grant of land from the State may be presumed. But what facts are sufficient to authorize the presumption, or for what length of time they must have concurred, has not as yet been authoritatively determined. It may be, perhaps, that there is no general rule applicable to the subject, and that each case, as it arises, must depend upon its own peculiar circumstances. This would seem more probable if the presumption is one not of law, but, as it is generally said, of fact to be drawn by the jury from the evidence. Certainly, no one who will give the subject a moment's reflection, but must conclude that a very different state of facts should authorize the presumption of conveyances between private parties from those which will justify the presumption of a grant from the State. And here again it should certainly be much more readily presumed when all the facts are shown to exist which entitled the party to the grant, and the fact sought to be presumed is a mere ministerial act to evidence a pre-existing and established right, than when the presumption is asked to be made from the mere fact of continued possession, if in any case it can arise from this fact alone.

In the present case, the facts as to the possession and acts of

ownership over the land claimed by appellee seem to be more meagerly presented than they should have been, when they are relied upon for the presumption of a grant. They no doubt would have been presented more fully if there had been a serious contest which involved appellee's title to any considerable part of the grant. It would seem, however, that, if the presumption of a grant could be indulged in any case from such acts of ownership and possession as appellee has shown, and within the time that has elapsed since the town of Bastrop was first laid off and established by the commissioner, Arciniega, as the capital town of the colony contract in which it was situate, it should be made in favor of appellee. The town was by law entitled to the quantum of land it claims, and it was expressly enjoined upon the commissioner to lay it off and extend the title. No act was required to be performed by the town to secure or establish its right; and no consideration was to be paid by it for the land. The State, also, has by a subsequent act of the legislature recognized appellee's title to the four leagues of land it claims. This would operate from its date as a legislative grant of the land then claimed, and would go in aid of the presumption of the pre-existing grant.

Although it is not necessary that we should at present give any authoritative exposition of this doctrine of presumed grants, we deem it proper, in view of what has been said with reference to the charge of the court upon this subject, that these additional suggestions should be thrown out, in order that there should be no danger of the parties being misled by an omission of all discussion of it. We do not at present see, however, why this controversy should necessarily involve the question of presumed grants. The legislature recognized appellee's title, and the dispute seems to turn on the mere question of boundaries between the parties; and it is not perceived why that may not readily and easily be determined. The surveyor who made the survey which was afterwards appropriated by the certificate under which appellant appears to claim, was examined as a witness, and says, that at that time this part of appellee's line had not been run, and that the line run by him was run as the line of appellee's land, and of the league which appellant now claims. If this witness is not mistaken in

this statement, it would appear to be only necessary to ascertain which of the two lines now contended for is the one really run by this witness. He or others could no doubt do this without difficulty.

For the error of the court below in the instructions given to the jury, and in overruling appellant's exceptions to appellee's testimony, as shown by the bills of exception, the judgment is reversed and the cause remanded.

Reversed and remanded.