## C. M. and Nancy Houston v. W. T. Blythe.

### (Case No. 1097.)

1. EVIDENCE.— The translation of a general land office archive paper from the original Spanish into English, made by the Spanish translator in the general land office, and attached to his deposition as an exhibit, with his certificate of its correctness, is admissible in evidence, in connection with his testimony, showing his ability to read and write the Spanish language, and that he had attached the exhibit as a translation of the archive Spanish paper.

2. SAME.— See statement of case and opinion for facts under which it was held that the action of the court in permitting the introduction in evidence of the *testimonio* of a title which was attacked as a forged paper, though in the main correct and proper, was not entirely so under the special facts of the particular case.

3. SAME.— When a *testimonio* of a grant, purporting to have issued in 1835, was attacked as a forgery, its execution should have been established by the assisting witnesses thereto, their absence accounted for or their handwriting proved.

4. SAME.— Some evidence, of some kind at least, showing the execution of the instrument, should be produced when demanded.

5. SAME.— In such a case, the affidavit of forgery being made, proof of the death and the signature of the officer executing the instrument, and some explanation of interlineations and erasures, if there be any of a serious character on the instrument, should always be required by the court when specially demanded, before the instrument charged to be forged should be allowed to be exhibited, and read to the jury, as part of the evidence; and then with full and proper explanations to the jury that the mere admission of the paper in evidence, under such circumstances, did not relieve the jury from the duty of passing, with all the evidence before them, on the question of forgery, and deciding for themselves, with all the facts before them, whether the instrument was forged or not. Following Cox *v.* Cock, 59 Tex., 521.

6. SAME.— The *ex parte* affidavit of a living party, found attached to a *testimonio* of title, cannot be used as evidence.

7. SAME.— Recitals in a private instrument, executed by an original grantee to a third party, cannot be used in evidence to affect the title of one not connected therewith, claiming under mesne conveyances from such grantee.

8. EXPERTS — COMPARISON OF HANDWRITING.— A photographic copy, smaller in size than the original from which it was taken, and not shown to be an exact reproduction of its original, though in evidence, cannot be made the basis for the introduction of evidence by comparison of handwriting.[1]

9. EVIDENCE. — Evidence of a witness taken by deposition, which was incorporated in a statement of facts on a former trial, and signed by opposing counsel, the deposition having been lost afterwards, may be used on a subsequent trial between the same parties, it being shown that it pertained to facts depending on an inspection of a paper alleged to be forged, and that the witness, though still alive, had, since his former examination, become blind.

---

[1] See statement of case for Weaver's testimony.

10. STATUTE CONSTRUED.—Art. 1475, Revised Statutes, is cumulative in its provisions.
11. SAME.— Certified copies of maps from the general land office are admissible in evidence.
12. PRACTICE.— Instructions asked by counsel on the trial of a cause should always be signed by counsel asking them.
13. TESTIMONIO.— It would not necessarily impair the usefulness of a *testimonio* as an instrument of evidence, or as a muniment of title, that it was in fact issued two or three days after the actual execution and date of the original protocol. Thus, if the original grant was in fact issued before the 13th of November, 1835, the fact that the *testimonio* was not made out and delivered for two or three days thereafter would not destroy the original title if otherwise lawful in all respects.
14. CASES CITED.— See opinion for a list of cases referred to as sustaining the conclusions above announced.

ERROR from Hopkins.    Tried below before the Hon. Green J. Clark.

This case was last before this court on an appeal by the present defendant in error, and was reversed.

The plaintiffs in error claimed that the land in controversy was granted by the state of Coahuila and Texas to Lovick P. Dikes, and attempted to make out title in Lovick P. Dikes, by introducing in evidence a certified translated copy, from the general land office, of a title granted him by George W. Smyth, commissioner. It showed that on the 15th September, 1835, upon the petition of Dikes, the commissioner ordered a survey to be made. That on the 11th day of November, 1835, the field notes of the survey were reported at Nacogdoches by the surveyor to the commissioner, and that on the same day, the 11th November, 1835, the commissioner, Smyth, granted the land described by the field notes, by an order by him signed and formally attested by subscribing witnesses, to Lovick P. Dikes. This decree was immediately followed by a title to Lovick P. Dikes, signed by the same commissioner and the same witnesses, and complete in all respects, except the date was written as follows: " Given at the town of Nacogdoches, the ———————, A. D. 1835."

The defendant's assault on this title was that it was granted after the closing of the land office on the 13th of November, 1835.

The evidence that he offered to prove this vice in the title was the *testimonio* copy, or second original of the title, which had the blank filled in the title with the date 15th of November, 1835.

This paper bears on its face the appearance of alterations and interlineations, and was attacked as a forgery by the sworn statements of plaintiffs and the depositions of many witnesses.

---

---

Blythe claimed the land by virtue of the location of the headright certificate of Robert Collier.

Numerous witnesses testified on behalf of defendants that in their opinion the signature of Geo. W. Smyth affixed to this *testimonio* was his genuine signature, and the most of these witnesses show that they are acquainted with Smyth's handwriting; and some of them say that he died in 1866. On the other hand fully as many witnesses swore that the signature, in their opinion, was not in the handwriting of Geo. W. Smyth.

The *testimonio* is signed by A. McLaughlin and B. F. Wright, as attesting witnesses. The attesting witnesses were not called, and there was no evidence in the record anywhere showing them to be dead or in any manner accounting for their absence.

The *testimonio*, which is found on file for the inspection of the supreme court, is much mutilated, but in various portions of it are found changes made by *barado*, or barring off an original word and interlining another. This occurs in the names of parties in the body of the instrument. At the close of the instrument, and before the signatures thereto, appear notes of emendation, seeking to validate the changes made by invalidating and revealing the words first written, and mentioning and validating the words afterwards interlined. This attempted validation of the changes in the *testimonio* is in a different and darker ink than the body of the title and the signatures of assisting witnesses; also the signature of Geo. W. Smyth, the commissioner, and the words interlined, are of darker ink than the writing in the instrument and the signatures of assisting witnesses. The notes of emendation at the close of the *testimonio* are not found in the land office protocol. These facts doubtless were known to counsel, but seem not to have been referred to in briefs. Photographs of the original protocol on file in the general land office were in evidence, but there was nothing showing that they were exact reproductions of the original — they were smaller in size.

On the trial the defendant excepted to the introduction of the *testimonio* in evidence:

1. Because it was attacked as a forgery.

2. It was in a foreign language.

3. Because its execution was not proved by the assisting witnesses, nor their absence accounted for.

5. Because the erasures and interlineations on the paper were not accounted for or explained.

6. It was not shown to be a true copy of the original protocol.

7. Because its execution had not been proved.

Exceptions overruled.

A witness, Weaver, was examined as an expert to show by comparison of the signature of Geo. W. Smyth in the protocol photograph as it there appeared, and in the *testimonio*, that the two signatures were made by the same man. This was done after defendants had read to the court the deposition of W. C. Walsh, the commissioner of the land office, to which was attached the photographic copy of the protocol as an exhibit. To this the plaintiff objected, because the photographic copy did not purport to contain the original signature of Geo. W. Smyth, but was only a copy, and there was nothing to show that the photograph was, as to size, etc., a reproduction of the original. The objections were overruled.

A witness, Archibald Hotchkiss, had given evidence by deposition on a former trial. The plaintiff offered the testimony then taken as embodied in a former statement of facts signed by counsel for both sides, in connection with evidence that the deposition then taken was lost, and that he could not at the trial testify as to papers as on a former examination, on account of having lost his eye-sight. The court excluded the evidence, holding that the only way it could be used was to substitute the lost deposition in the manner allowed by the statute. Exceptions were taken to these rulings.

Whiting, the Spanish translator in the general land office, and Brown, the former translator, were examined by deposition as witnesses — both of whom testified that they spoke and wrote the Spanish language, and that they attach to their depositions a translation of the original grant in Spanish to Lovick P. Dikes. To the reading of that translation objection was made and overruled. To both translations were attached the certificate of the witness of its correctness.

*Sam J. Hunter*, *A. A. Henderson* and *John L. Henry*, for plaintiff in error.

*L. D. King*, for defendant in error, cited: Jones *v.* Borden, 5 Tex., 412; Board Land Com'rs *v.* Walling, Dal., 524; Jones *v.* Menard, 1 Tex., 771; Kemper *v.* Corporation of Victoria, 3 Tex., 159, and authorities therein cited; McMullan *v.* Hodge, 5 Tex., 86; Hardy *v.* De Leon, 5 Tex., 211; Kilpatrick *et al. v.* Sisneros *et al.*, 23 Tex., 114.

WEST, ASSOCIATE JUSTICE.— This case has already been twice before this court. See Ury *v.* Houston, 36 Tex., 265, and Blythe *v.* Houston, 46 Tex., 65.

Time will not now permit of an extended examination, at length, of all of the numerous errors complained of, or allow a discussion, or even a partial consideration, of the many propositions announced and presented as growing out of the errors assigned.

The court ruled correctly in allowing the evidence, and the accompanying translations, of both the witnesses Whiting and Brown to be read to the jury.

The action, however, of the judge on the question of the introduction in evidence of the *testimonio* of the L. P. Dikes grant (the genuineness and validity of that instrument being directly and vigorously attacked) requires more serious consideration.

The court, it is true, as appears from the concluding paragraph of the fourth bill of exceptions, when the plaintiffs in error objected to the introduction in evidence, before the jury, of the *testimonio* in the Spanish language, did not permit it to be read until a translation of it had been produced and a number of the depositions, taken by the defendant in error, concerning its character, execution and genuineness, now found in the record, were read to the jury.

We are of the opinion that this action of the court in relation to the introduction in evidence of this instrument, though in the main correct and proper, was not entirely so under the special facts of the particular case now under consideration.

The instrument in question was attacked as a forgery; there was also raised to it, when offered in evidence, another specific objection to its introduction, based on the ground that its execution had in no form been proved, or attempted to be proved, by the evidence of the assisting witnesses to it, or their absence in any manner accounted for.

The signature of the officer who executed the instrument, if it was genuine, was duly and formally attested by two assisting witnesses, A. Laughlin and B. F. Wright. The objection was specially taken, as we have seen, at the time when it was offered to its admissibility, that its execution should in some manner be proved by these two witnesses, who had been specially selected by the maker of the deed for that purpose, or their absence satisfactorily explained. The death, if they in fact were dead, or the causes of the non-production in court of one or both these witnesses, are in no manner accounted for, nor were their existence or handwriting proved or attempted in any manner whatever to be proved.

After so great a lapse of time as has transpired in this case, no very great deal of evidence should or would be required by the court as to the death or non-production of such assisting witnesses;

still, when specially demanded, the best evidence of that fact the nature of the case, under all the circumstances, would admit of should be required. Some evidence of some kind, at least, pertinent to that matter, should be produced when demanded. Their existence, age, occupation, their place of residence, when last known to be alive, some evidence as to their handwriting, or other like matters, it would seem, under the facts disclosed in evidence in this case, could be proved, to some extent at least, by some of their old neighbors or acquaintances.

This matter, together with proof as to the death, and the signature of the officer executing the instrument, and some explanation of the interlineations ·and erasures, if there be any of a serious character, should always be required by the court when specially demanded and insisted on, as in this case, before the instrument that is charged to be forged should be allowed to be exhibited and read as part of the evidence in the case, and then with full and proper explanations to the jury from the court that the mere admission of the instrument in evidence, under such circumstances, did not relieve the jury from the duty of passing, with all the evidence before them, upon the question of its genuineness, and deciding, under all the facts in the case, whether it was in fact a forged instrument or not.   Cox v. Cock, 59 Tex., 521.

It would, no doubt, also throw additional light on the matter in issue, if there was some testimony introduced explaining why it was that neither party had taken the evidence of the officer, Smyth, who had issued the original title, and who was alive for a number of years after this suit had been instituted, and who did not die until as late as the year 1866.   This officer was the same individual who had executed the original title, decided in Donaldson v. Dodd, 12 Tex., 387, to be void, because issued after the closing of the land office. No doubt, from what the evidence in this case and the public history of this state informs us of his character, and mode of transacting public business, he had given the subject much attention, and it is greatly to be regretted that his evidence was not obtained in time in this case.

The objection contained in the seventh bill of exceptions to the introduction in evidence of the affidavit of —— Amory, attached to the *testimonio*, made before Judge Charles S. Taylor, was well taken.   Amory, if alive, could have been produced and examined as the other witnesses in the case were, but his affidavit in question was *ex parte*, and was not only not calculated to shed any proper light on the issue, but might be very likely to prejudice, in the eyes of the jury, the rights of the plaintiffs in error.

Opinion of the court.

The eighth bill of exceptions is also well taken; the pleadings of the intervenor, Bondies, could not be used in evidence to affect the rights of the plaintiffs in error. Nor could the fact that in a private instrument, executed between the original grantee and an individual who was a stranger to the plaintiffs in error, the instrument so executed between them reciting that the *testimonio* of the original title in his possession was dated the 15th of November, 1835, or words to that effect, in any manner either aid or prejudice the rights of the plaintiffs in error. Deery v. Cray, 5 Wall., 795.

Without going at any length into the discussion or consideration of the question, we are also of the opinion, that, under the facts presented in this case, the objections to the evidence of the witness Weaver, presented in the twelfth bill of exceptions, were also well taken.

To permit the witness to testify, under the facts and circumstances detailed in the evidence and set forth in the bill of exceptions, would be extending the rule as to the introduction of expert testimony, in the proof of handwriting by comparison, farther than we are at present disposed to do. Eborn v. Zimpelman, 47 Tex., 519, and cases there cited; Tome v. R. R. Co., 39 Md., 36. This evidence should have been excluded as incompetent, and as calculated to prejudice the rights of the plaintiffs in error before the jury. Foster's Will, 34 Mich., 21.

The court was also in error in refusing to permit the substance of the evidence of the witness Archibald Hotchkiss (given by deposition on a former trial) to go to the jury.

It had originally been taken, by the defendants in error themselves, to show the falsity of the *testimonio*. The proof was full and satisfactory, as to the loss or destruction of this deposition, and, also, as to the present unfortunate physical condition of the aged witness; under all the circumstances disclosed, we think the plaintiffs in error had the right to his evidence in the form and manner offered.

Under the Revised Statutes (art. 1475) depositions, when lost or destroyed, may be substituted, but we are of the opinion that these statutory provisions are cumulative in their character, and do not furnish the only mode in which lost depositions or other lost evidence of a like character may be substituted. Burton v. Driggs, 20 Wall., 134, 135; Weeks' Law of Depositions, sec. 458, and cases there cited. See, also, 1 Greenl. Ev., sec. 163 and notes thereto, and also same work, sec. 168 and notes; Wharton on Ev., vol. 1, secs. 179, 180, and notes.

We think, also, that the fourteenth bill of exception is well taken; the certified copy of the map from the general land office, offered

in evidence, should have been allowed to go to the jury. Hollings-worth v. Holshousen, 17 Tex., 51; Smith v. Hughes, 23 Tex., 248.

The charge of the court was, in several respects, somewhat objec-tionable, but we do not deem it necessary, at this time, to review at length the action of the court in giving its charge or in refusing the many different and lengthy instructions to the jury asked by both parties to the controversy. No useful purpose, in reference to the case, could be at present subserved by such an examination.

It may, however, be remarked in passing, in this connection, that neither the instructions asked in this case by either plaintiffs or defendants in error appear to be signed by counsel. Though the statute (R. S., art. 1319) does not, in terms, require such instruc-tions to be so signed, it was evidently intended that it should be done, and it is the better and the safer practice for counsel, in all cases, to sign their names to such instructions as they desire the court to pass on. Redus v. Burnett, 59 Tex., 576.

The real question, at last, in this case, for the jury to determine, is not whether the *testimonio*, the purported copy, is a genuine in-strument or not, or whether or not such copy was issued before or after the 13th of November, 1835. For, though in general and in fact, in almost all instances, the execution and issuance of the pro-tocol and the act of making a certified copy of it were, in effect, contemporaneous acts, yet, in the very nature of things, the original title must exist in every case at some appreciable period of time an-tedating the existence of the copy of such original; and where many original titles were issued, as was not infrequently the case, by the commissioners appointed to extend title, on the same day, in all such cases the act of making the *testimonio* or copy of such original must sometimes be somewhat delayed. The two acts could not, in every instance, be simultaneous.

The *testimonio* must, if it be a true and trustworthy copy of the original title, always bear the same date as to the time of the actual issuance of the title itself as the original title does, but it would not in the least render null and void, or necessarily vitiate, the original grant, if it was in all other respects good and lawful, nor impair its usefulness as an instrument of evidence or as a muniment of title, that the *testimonio*, the copy of it, was, in fact, issued two or more days after the actual execution, date and issuance of the original title.

For example, if, in fact, the original title in question, which is wanting in the date of the day and month when it was issued, was, as a matter of fact, issued as the law presumes, in the absence of

actual proof to the contrary it was, on the 11th day of November, 1835, or on the 12th day of November, 1835, it could not be vitiated or made null by positive proof that for satisfactory reasons the *testimonio* or copy of it was not entirely finished and completed and signed until the 14th or 15th of November, 1835.

If the original grant was, in fact and in truth, executed, completed and issued before the 13th of November, 1835, the fact that the *testimonio* of such grant was, for some good cause, made out a day or two after that event, would not destroy such original title if otherwise lawful in all respects.

The *testimonio*, for this reason, or for other good cause, might possibly be of no effect; yet if, in fact, the original grant itself be genuine, and be lawfully executed and issued at a proper time and by a lawful officer, it will still pass the title from the government to the meritorious colonist or purchaser, notwithstanding any accidental defect or irregularity, or error that may be found to have intervened in the manner and form in which the official copy of such original grant was afterwards prepared.

All the previous decisions of this court on this and like questions have been examined, and as carefully considered as could be done, but time will not now permit of an extended review of them, or of their further examination or discussion in this connection.

The following cases are, however, specially referred to as throwing light on the matters here considered, and, as it is believed, sustaining in the main the conclusions at which we have arrived in the present case: Titus *v.* Kimbro, 8 Tex., 210; Sheppard *v.* Harrison, 54 Tex., 96; Hanrick *v.* Jackson, 55 Tex., 17; Hines *v.* Thorn, 57 Tex., 98; Grimes *v.* Corporation of Bastrop, 26 Tex., 310; Parker *v.* Bains, 59 Tex., 15; Hatchett *v.* Conner, 30 Tex., 109; Jones *v.* Menard, 1 Tex., 771; Smith *v.* Townsend, Dallam, 570; Wheeler *v.* Moody, 9 Tex., 372; Word *v.* McKinney, 25 Tex., 267; De Leon *v.* White, 9 Tex., 598; Andrews *v.* Marshall, 26 Tex., 212; Paschal *v.* Perez, 7 Tex., 348; Herndon *v.* Casiano, 7 Tex., 322; Wood *v.* Welder, 42 Tex., 406; Howard *v.* Richeson, 13 Tex., 553; Hawley *v.* Bullock, 29 Tex., 216; Lewis *v.* San Antonio, 7 Tex., 288; McGehee *v.* Dwyer, 22 Tex., 435. Other cases in our reports can no doubt be found, sustaining the same views.

In reversing this case, on the former appeal, in 46 Tex., 79, attention, in the concluding paragraph of the opinion of the court, was called to the averments in the plaintiff's pleadings, alleging the title to the land sued for to be in the plaintiff in error, Nancy

Houston, while by the evidence it would, to some extent, appear that a part of the land so claimed was community property.

We again call attention to this matter, and suggest that the pleadings, if they do not already, should be so shaped as to plainly and distinctly disclose what is the amount and character of interest claimed by the plaintiffs in error in the land in controversy. This will prevent any formal or technical error being committed by either party, hereafter, in the entry of the final judgment.

We have not deemed it necessary, for the disposition of the case, to further consider, in detail, all of the many errors assigned as grounds for the reversal of the judgment.

The judgment below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 11, 1883.]