FRANCISCO RUIS'S HEIRS v. T. J. CHAMBERS AND ANOTHER.

The verdict was for the defendant, and had this resulted exclusively from the rejection of the plaintiffs' title, on the ground of there being but one assisting witness, the judgment must necessarily have been reversed, as we have decided, in the case of Clay v. Holbert, that though a title of possession be not authenticated by the signatures of two assisting witnesses, it is not *ipso jure* a nullity, but remains valid and effectual, provided its execution by the Commissioner be proved by competent and sufficient evidence.

But the defendant offered the grant, set up in his plea, in evidence; and if that be the elder title and valid in law, the refusal to admit the grant of the plaintiffs in evidence becomes immaterial, as the judgment, on this hypothesis, must necessarily have been for the defendant.

The term "Mexican," in the language of legislation, included naturalized as well as native born citizens of any of the Mexican States.

As the term "Mexican" includes both native and naturalizad citizens, it was for the Governor to whom the petition (for a grant of land in sale) was presented, to judge of the capacity of the applicant, and whether he came within the class benefitted by the law.

The next objection to the title is, that it embraces more than its legal front on a navigable stream. This point has been but slightly discussed; and what may be the effect of a departure of the law, in this particular, in cases to which it may properly apply, it is not necessary to examine.

Where a survey is located in the angle formed by the confluence of two navigable streams, the law which requires surveys on navigable streams to front one quarter of the square on the stream and run back for quantity, is inapplicable.

Where the defendant pleaded an elder grant, and the plaintiff filed a replication stating particular objections to such elder title, the Court said it might well be contended that none other could be interposed on the trial; but &c.

See this case as to the meaning of the Spanish word "sobre," in the description of a location with respect to the junction of one stream with another.

Near proximity, indicated by the word near, to another place, specified in a location, would afford no guide for the direction of others, in selecting their lands, so as not to include those embraced in the location; and consequently, having no identity or means by which it could be identified, it must be without force or effect.

Appeal from Milam.

*Webb & Oldham, Hughes* and *Sayles*, for appellants.

*T. J. Chambers*, for appellees.

Ruis v. Chambers.

HEMPHILL, CH. J. This was a suit by the heirs of Fran cisco Ruis, to recover from the possession of the defendant Thompson, two leagues of land, granted to their ancestor by the Government of Coahuila and Texas. The defendant Chambers intervened, as the warrantee of Thompson, and set up title to one league of the land by virtue of a grant of a date older than that of the plaintiffs; and to the plea of the defendants the plaintiffs replied, that the grant to Chambers was an absolute nullity, being a sale to a person not a Mexican, and fronting upon a navigable stream more than one fourth of its depth.

The record is burthened with exceptions; and numerous questions might be discussed, did this late hour of the Court permit an examination of any but the points absolutely essential to the decision.

The verdict was for the defendant, and had this resulted exclusively from the rejection of the plaintiffs' title, on the ground of there being but one assisting witness, the judgment must necessarily have been reversed, as we have decided, in the case of Clay v. Holbert, that though a title of possession be not authenticated by the signature of two assisting witnesses, it is not *ipso jure* a nullity, but remains valid and effectual, provided its execution by the Commissioner be proved by competent and sufficient evidence. (Javent et al. v. Le Breton et al., 8 Martin N. S. 501.) But the defendant offered the grant set up in his plea in evidence, and if that be the elder title and valid in law, the refusal to admit the grant of the plaintiffs in evidence, becomes immaterial, as the judgment, on this hypothesis, must necessarily have been for the defendant.

The issue, on the grant of defendant, as made in the pleadings of the plaintiff, by way of replication, is that of nullity, on two grounds, viz:

1st. That the grant, being a sale, was made to a person not a Mexican, the said Chambers being a native born citizen of the United States of North America, viz: of the State of Virginia; and

2nd. That it fronted on a navigable stream more than one fourth of its depth.

The defendant Chambers offered in evidence his letters of naturalization, as a Mexican citizen, of a date antecedent to that of his grant, and the question is whether by such naturalization he came within the purview and benefit of the 24th Art. of the Colonization Law of the 24th March, 1825, which declares that the government shall sell to Mexicans, and to them only, the land they shall wish to purchase, &c. (L. C. and T. p. 20.) Did he by naturalization become a Mexican, and what is the meaning of the term Mexican?

In contemplation of law, or in the language of legislation, a naturalized foreigner can as well be a Mexican, as one born within the country. The term Mexican has been defined at various times by the laws of Mexico. By an order of the 10th June, 1838, Mexicans were declared,

1st. To be those born within the territory of the Republic or without it, of a Mexican father.

2nd. Those born out of the Republic, but residing within it in 1821, provided they have not renounced their quality of Mexicans.

3rd. The natives of Central America, who resided there when it formed a part of the Mexican nation, and have continued afterwards to reside in the territory of the Republic.

4th. Foreigners who may have obtained or may obtain letters of naturalization in conformity with law. (Escriche Diccionario, *verbo* NATURAL.)

Such was about the substance of the description of who were Mexicans, as given in the Constitutional Law of Mexico, of September, 1835. That law is not now accessible to me; but without doubt, it will be found to embrace naturalized foreigners within the category of Mexicans.

In fact all such national appellations have a double import: they may mean either native born citizens of a country, or they may include also persons who, by naturalization, have

become citizens and thus entitled to the privileges and the distinguishing appellative of the native born citizen ; and this is especially the fact, with reference to countries under the Spanish jurisprudence. For instance, a native born citizen of the State of Coahuila and Texas was denominated a Coahuiltejano, that is a Coahuiltexian ; but several other classes, besides the native born, were also entitled to the same appellative, and among these were foreigners, who obtained letters of naturalization. (Constitution of Co. and Texas. Art. 1, 16, 17, L. and D., 313, 314, 315.)

Escriche, in his dictionary, under the word "Espanol" or Spaniard, after noticing the definition of the dictionary of the Spanish Academy, that the word Spaniard was a native of the kingdom of Spain, says that, legally speaking, this is not exact, as one may be born in the kingdom without having the quality of a Spaniard, and on the contrary, one may be born with the quality of a Spaniard in a foreign country ; besides, a naturalized foreigner must be considered as a Spaniard ; that, in the language of legislation, the quality of a Spaniard belongs to all the individuals of both sexes who form part of the Spanish nation, and among those, he enumerates foreigners who may have obtained letters of naturalization. (*Vide* L. 6. 7. and notes 4 and 5, Tit. 14. lib. Nov. Rec.) And the same author gives the definition in the Constitution of the Spanish Monarchy of 1837, viz : 1st. Spaniards are all persons born in the dominions of Spain. 2nd. The children of a Spanish father or mother, though born without the kingdom. 3rd. Foreigners who may have obtained letters of naturalization. And such is the rule of classification in Venezuela. The quality of a " Venezolano," or citizen of Venezuela, is acquired either by birth or naturalization. And thus in Chili, the common appellative of a citizen, whether by birth or naturalization, is " Chileno." (Escriche, Dicc. Edition of 1852, *verbo natural.*)

Naturalization absolute is defined in L. 6, Tit. 14, Lib. 1, of the Nov. Recop., to be the total incorporation into the king-

dom, of the subject to whom it may be granted, so that he may enjoy every office as truly as if he had been born in Spain.— Some authors, not now before me, define the word "natural" to include as well a naturalized as a native born citizen. (See Escriche's Derecho Patrio, 1 Feb. Mej. 73, Sec. 1—2.)

The Mexican nation was, by the Constitutive Act, declared to be composed of the provinces formerly known as the Vice-Royalty of New Spain, &c. (Art. 1, White's Recop., vol. 1, p. 375.) And its integral parts were, by the 6th Art., declared to be free, sovereign and independent States. A citizen of one of these States is one of the persons who, in the aggregate, form the Mexican nation, and is consequently a Mexican ; and we have seen that a naturalized foreigner, in the State of Coahuila and Texas, is a Coahuiltexian or a citizen of Coahuila and Texas, and consequently a constituent part of the Mexican nation.

As the term Mexican includes both native and naturalized citizens, it was for the Governor to whom the petition was presented, to judge of the capacity of the applicant, and whether he came within the class benefitted by the law. The grant is evidence of the construction by the Executive who made the grants, and it is well established that the construction of their powers and the laws which conferred them, adopted and acted upon by the former authorities of the country, must be respected, unless it is clearly shown that they have exceeded their powers or have acted in manifest contravention of the law. (Jenkins v. Chambers, vol. 9, Tex. R. 167.) The law was susceptible of two constructions, and the officer, whose function it was to act under the law, having decided, his decision could not now be disregarded, without establishing a principle which might strike deeply at the validity and security of the land titles of the country.

The next objection to the title is, that it embraces more than the legal front on a navigable stream. This point has been but slightly discussed ; and what may be the effect of a depar-

ture from the law, in this particular, in cases to which it may properly apply, it is not necessary to examine. This grant is located at and below the confluence of two navigable streams. It was nearly a square, fronting on both the Brazos and Little Rivers. And it was proven by a practical and scientific surveyor, that by surveying in a square, it would present less front on both streams, taken together, than by surveying in any other form ; that if he surveyed a league on the confluence of two navigable streams, he would survey it in a square, if (although) a smaller stream ran into a larger, for if he gave only one fourth front on the larger stream, he must run back on the smaller for quantity. This evidence sufficiently disposes of the objection for excess of front, showing that there was less front on a navigable stream than would have been taken by any other mode of survey.

These are the only objections taken by the replication to the title of the defendant, and it might well be contended that none other could be interposed ; but as a question has been made as to the priority of title, or rather of equities, of the parties respectively, we will very briefly examine the point in dispute. The equity of the plaintiffs is based on a denunciation of the land to the political Chief, in September, 1831, and an amparo from the Alcalde of the jurisdiction granting him the preference to and possession of the land, dated Nov., 1831. This was prior to the selection or denunciation of the land by the defendant. But the defendant insists that an amparo does not, by its intrinsic force, give any right to land, and that at all events the land in controversy was not embraced in the denunciation of the plaintiff or in his amparo ; that his location or denunciation was for lands above the junction of the rivers Brazos and St. Andres, whereas this land lies below the confluence of the two rivers. The plaintiff, after selecting some of the nine leagues embraced in his grant, and especially two on the river Brazos, opposite the mouth of the St. Andres, proceeds with his selections thus : *dos sitios mas por*

*esta parte del referido Rio de los Brazos sobre las juntas del de San Andres*, &c. This is translated by Mr. Fisher, formerly Spanish Clerk in the Land Office, (and an accomplished Spanish scholar,) as follows : " two leagues more, which are on this side of the said river Brazos, above the junction of the San Andres." The translation of Mr. Robertson, formerly Spanish Clerk in the Land Office, and having competent knowledge of the language, which appears in the record, is, " two sitios more on this side of said river Brazos, upon the junction of the San Andres and said river." There is said to be a translation to the effect, that the two leagues were to be near the junction of the two rivers. The whole of the controversy turns upon the meaning of the word " sobre," and evidence was taken as to its signification. Mr. Robertson stated that it meant " upon" as used in the Ruis title, and gave various definitions, as, above, over, at the top, as taken from Newman's dictionary. The proposition " sobre " has various significations, as may be seen by consulting the dictionary of the Spannish Academy by Salva, and the late dictionary of the Spanish language. The general idea conveyed to the mind by the word is that of something over or above or upon another.— One definition is " near " something else, but with a greater elevation and power " dominandola."

From the translations, the evidence, and the general meaning of the word " sobre," it results that the selection of these two leagues, as set forth in the denunciation of Ruis, was not intended to include lands below the junction of the two rivers, and which in fact did not touch or reach the said junction. The language is scarcely susceptible of a precise and accurate translation ; but whatever may be its exact meaning, one thing is certain, it does not convey the idea of lands, entirely below the confluence of the streams. And further, if its proper and customary meaning was " near," and if the denunciation had the effect of a location, it could not affect the rights of third parties. though subsequently acquired, for the

reason that as a location it was vague and indefinite. Mere proximity to another place, specified in a location, would afford no guide for the direction of others, in selecting their lands, so as not to include those embraced in the location ; and consequently, having no identity or means by which it could be identified, it must be without force or effect.

The defendant having the first survey, and the prior title or equity, the judgment is ordered to be affirmed.

Judgment affirmed.