## E. G. HANRICK V. A. M. JACKSON.

55 17<br>L88 393<br>88 411

'(Case No. 3555.)

1. PRESUMPTIONS IN FAVOR OF TITLE.— Whether an officer authorized to extend title to lands in Texas prior to the revolution of 1836, set forth in the title the authority given him by the governor to extend the title, and that a concession had been granted, the presumption will be indulged that he acted in conformity with law and not in violation of it.

2. MEXICAN GRANT.— An authentic copy of the *testimonio* of a concession, given to the interested party, and incorporated in the papers constituting the grant, would, where there was one concession to three parties for land to each, be as effectual as the original *testimonio*.

3. INTERLINEATIONS AND ERASURES IN A GRANT.—Interlineations and erasures found in the protocol of a grant, noted and referred to at the foot of each paper where they occur in the *expedientes* of title above the signature of the officer who extends title and of the subscribing witnesses, do not cast such suspicion on the title as to authorize its exclusion as evidence.

4. MISTAKE IN A GRANT.— When it appears from all the papers constituting an *expedientes* of title that the grant was intended for one party, and the name of another party appears in the granting clause, the name in the granting clause will be regarded as having been inserted through mistake, and this, though the erasures and interlineations in other portions of the grant may show that the grant was originally begun and intended for him whose name remained in the granting clause.

5. FRAUD — MISTAKE.— Two grants of eleven leagues were made to the same party. There was no evidence that a *testimonio* ever issued on the grant first made, that possession was ever taken of it, that it was ever claimed by the grantee or by any one under him, or that he ever paid government dues on it. The land covered by the second grant was selected by the grantee, was always claimed by his vendees, and soon after the organization of the general land office, the agent of the grantee explained to the commissioner that the first grant was made through mistake. *Held,*

 (1) That the validity of the second grant never having been questioned by individual act or official authority for a period of over thirty years, it could not be questioned by a party having no pre-existing equitable claim or interest.

6. GRANT.— The want of authority of the officer in extending a title which rendered it void must be shown by the law, or that he

VOL. LV—2

attempted to exercise his authority beyond the territory over which he had jurisdiction, or something of like character, and not from proof of mere error of the officer in extending title to one not in fact legally entitled, but who he believed was entitled to receive it.

APPEAL from Falls.    Tried below before the Hon. X. B. Saunders.

Hanrick, claiming title under an eleven league grant, which purports to have been extended to Rafael de Aguirre, October. 22, 1833, sued Jackson in trespass to try title, to recover certain lands involved in this suit, claimed adversely by Jackson under certificate locations and surveys made in 1874.

Jackson pleaded the general issue, "not guilty."

March 21, 1877, a jury having been waived and the case submitted to the court, judgment was rendered against the plaintiff.

Plaintiff, in support of his title, introduced in evidence over defendant's objections:

A certified land office copy, made in 1855, of what purported to be a grant in sale to Rafael de Aguirre of eleven leagues of land on Cow Bayou and San Gabriel, in Williamson and Fall counties, including the land in dispute, extended by Luke Lessassier, alcalde of Austin, on the 22d of October, 1833.

The title to Aguirre, as disclosed by the paper introduced in evidence by the plaintiff, is as follows:

1. Application by Williams, as Aguirre's attorney, for an extension of title, dated October 4, 1833.

2. Order of reference by the alcalde, Lessassier, to Austin and Williams, empresarios, for their consent, and the consent of Austin and Williams, to the selection of the lands designated in the application, both dated October 5, 1833.

3. Order of survey of the same date.

4. Report of surveyor and field notes, not dated.

5. A copy made by Lessassier, on the 6th day of Sep-

tember, 1833, from a paper presented to him by S. M. Williams, in substance purporting to be a *testimonio*, dated Leona Vicario, June 13, 1830, of a grant in sale of eleven leagues of land made to each of three Mexicans, Jose Maria de Aguirre, Rafael de Aguirre and Thomas de la Vega, on the 14th of June, 1830; but wanting the signature of the governor and the seal of the state to the concession.   To this copy Lessassier appended the following certificate:

"I certify, so far as I can and am permitted by law, that the foregoing document" (the petition and concession) "is a copy of its original, which has been presented to me by the citizen, Samuel M. Williams, attorney of the citizens, Jose Maria de Aguirre, Rafael de Aguirre and Thomas de la Vega, which I have taken at his verbal request, and which I give for the corresponding uses and ends, and sign with witnesses of assistance, as prescribed by law.   I certify.

"Town of San Felipe de Austin, 6th day of September, 1833.                              L. LESSASIER.

" Assisting:

    " HORATIO CHRIESMAN,

    " ROBERT PEEBLES."

6. Extension of final title by Lessassier, wherein the copy made by him September 6, 1833, "placed at the third and following pages of this document" — the final title — is specially referred to by him as the warrant of his authority to act in extending the title, and is denominated "the superior decree, dated in said Leona Vicario, on the 14th day of June, 1830."

Defendant's objections to this paper were, in effect, that it appeared therefrom that the officer by whom the title purports to have been extended acted without authority of law and against law in extending title, not upon the authentic *testimonio* of the concession, but upon an

unauthorized, illegal and void copy made by him from a private paper in S. M. Williams' hands.

The name, Perfecto Valdez, appeared in the granting clause of the final title: "I confer and put in possession, real, actual, corporal and virtual, to the aforesaid attorney of the citizen Perfecto Valdez."

A certified copy of a map from the land office was introduced, of the Aguirre grant on the Brazos, in McLennan county, showing its appropriation by patents from the state, beginning in 1846.

2. A letter of instructions from the commissioner, Borden, to Jas. Howlett, surveyor of Milam district, dated February 11, 1840, touching the propriety of permitting entries or files on titled land. "* * * I refer you to instructions of August 3, 1838, and April 18, 1839, which I conceive to be founded on justice and equity, and are fully explicit and expressive of my opinion, for you not to permit any entry, of whatever nature, upon any deeded land, unless the evidence required by instructions of April 18, 1829, is produced. I would, however, except from these instructions one of the eleven leagues marked on the map in the name of Rafael de Aguirre, it having been satisfactorily explained to me by the Hon. S. M. Williams that a mistake has occurred, by which it happens that two eleven leagues are granted to Aguirre, but that the title dated 22d of October, 1833, including ten leagues on San Gabriel and Williamson creek, is the genuine one; the other eleven leagues on the Brazos may be considered subject to location and survey, as though no title had issued. * * *

(Signed)                              "JOHN P. BORDEN,
          " Commissioner General Land Office."

3. A second letter from Borden to Howlett, dated April 17, 1840, reiterating his opinion as to the validity of the Aguirre grant on San Gabriel.

4. Letter of March 2, 1840, from W. H. Raglin, chief clerk general land office, to Chas. Raymond: "* * * It has been a rule adopted by the commissioner of the general land office, founded, as I conceive, both upon justice and equity, that where there has been two titles granted to the same individual, and a satisfactory showing of the facts made by the county surveyor for the county in which the land under the last title is situated, it is subject to location; the title, therefore, in Robertson's colony is not subject to location, as it is of a prior date to the one issued in Zavilla colony."

5. Letter of August 3, 1838, from Borden to Howlett: "The printed instructions with the following N. B.: In consequence of the strong prejudice still existing against the eleven league claims and the owners of them, many persons may wish to locate again on the same land notwithstanding the express instructions to the contrary, and in order to substantiate the reason for having the same respected, I here insert extracts from the opinion of the attorney general on the subject, one of which is as follows: 'Where a title has actually passed from the government to a citizen, and is divested from the one and vested in the other, and becomes liable to forfeiture in consequence of any act or omission of duty on his part, it cannot be taken from him except upon a judicial inquiry into the cause of forfeiture and office found, as its (it is) denominated, or a decree of a proper tribunal for that purpose. * * *'"

6. A letter, introduced by defendant, from Howlett to Borden, dated April 11, 1840 (to which the letter of Borden of April 17, 1840, was a response), in which Howlett states that he has been required at the suit of one Halbert to appear before the district court and show cause why he should not receive files on the second title, and that Halbert had represented that he (the commissioner) had told him that there was something wrong about the

Aguirre title; that Aguirre could not have two grants of eleven leagues; and that it appeared from the abstract that the grant on the San Gabriel was later in date.

Title to eleven leagues of land, based on the *testimonio* of a concession made to Aguirre June 14, 1830, was extended to him in McLennan county, west of the Brazos, at the mouth of the Bosque, on the 4th day of October, 1833. The *testimonio* found in this title to Aguirre on the Brazos is dated March 9, 1831. The title relied upon by the appellant was extended to Aguirre over lands on the San Gabriel and Cow Bayou in Williamson and Falls counties, on the 22d of October, 1833.

Defendant introduced in evidence, over the objections of plaintiff:

*First.* A certified land office translation of the same title (the Aguirre title on the San Gabriel and Cow Bayou), in which certain words, in various parts of the *expedientes*, are written in *red* ink, and certain others in *green* ink; those in *red* ink being translations of words appearing in the original Spanish record as written over other words that have been erased — scratched out; and those in *green* ink being translations of words added to other words in the original and words interlined therein.

*Second.* Photographic copies, called for by plaintiff in his cross interrogatories, of the application by Williams, of the order of reference to and consent of Austin and Williams, showing the erasures, interlineations, substitutions and alterations, as they appear on the face of the original document — the photographs being reproductions in appearance of the original, save as to the abrasions on the surface of the original paper and as to the color of the paper on which it is written.

*Third.* Copies, in Spanish, of all other parts of the title down to the final title.

*Fourth.* A photographic copy, also called for by plaintiff, of the final title, showing defects apparent on the face

of the original similar to those brought out by the other photograph. All which papers and photographs were tendered in connection with the depositions of Whiting, Spanish translator; J. W. Hutchins, land office clerk of long standing; and of J. P. McKinney, formerly a clerk of S. M. Williams, all of whom, from an actual inspection of the original document in the land office, testified as to the erasures, interlineations, substitutions and alterations on the face of the title, and as to letters, and parts of letters, of original words, still standing on the paper, some of which had been utilized in the construction of substituted words and dates.

Other evidence was introduced not material to a proper understanding of the opinion.

*Walton, Green & Hill* and *E. J. Gurley,* for appellant.

*Wooldridge & Fisher,* for appellee.

I. The Aguirre title, relied upon by plaintiff, is void on its face. Art. 141, Const. of Coahuila and Texas; art. 49, decree 19, Constitutive Act; Mason *v.* Russell, 1 Tex., 730; Goode *v.* McQueen's Heirs, 3 Tex., 241; Edwards *v.* Davis, 3 Tex., 328; State *v.* Delesdenier, 7 Tex., 109; Hancock *v.* McKinney, 7 Tex., 440; Todd *v.* Fisher and Miller, 26 Tex., 241; Stoddard *v.* Chambers, 2 How. (U. S. S. C.), 318; Polk's Lessee *v.* Wendall, 9 Cranch, 99; Same Case, 5 Wheat., 303; Patterson *v.* Winn, 11 Wheat., 380; Sampayreal *v.* U. S., 7 Pet., 222.

II. The title relied upon by appellant, if title to any one, is a title to *Perfecto Valdez,* and not to Rafael de Aguirre. Const. of Coahuila and Texas, art. 141; Constitutive Act, decree 19, art. 49; State *v.* Cardenas (citing Delespines' Heirs *v.* U. S., 12 Pet.), 47 Tex., 286 *et seq.;* Paschal *v.* Perez, 7 Tex., 358–366; Herndon *v.* Casiano, 7 Tex., 333; Titus *v.* Kimbro, 8 Tex., 220; Houston *v.* Perry, 3 Tex., 395; Andrews *v.* Marshall, 26 Tex., 212;

York *v.* Gregg, 9 Tex., 92; 1 Greenl. on Ev., § 485, 13th ed.

III. The act of an officer, in assuming to exercise an official attribute, will not be presumed correct and within the limits of his authority, when the want of authority to act is apparent; and when not apparent, and the presumption of authority (jurisdiction) has arisen, it may be repelled by proof. Jones *v.* Muisbach, 26 Tex., 236; Jenkins *v.* Chambers, 9 Tex., 232, 233; Houston *v.* Perry, 3 Tex., 395; Goode *v.* McQueen's Heirs, 3 Tex., 253–257; Walker *v.* Meyers, 36 Tex., 252.

IV. Aguirre might, perhaps, abandon his grant on the Brazos; but this would not entitle him, without another concession or permit from the government, to appropriate other eleven leagues elsewhere.

V. The title on the San Gabriel and Cow Bayou, if void on the 22d of October, 1833, is void now, no action having since been taken by the state validating it.

VI. The first title to Aguirre, of October 4, 1833, completed, satisfied and exhausted his concession; and a subsequent extension of title to eleven leagues, in a different locality, cannot be sustained as an excess in survey.

VII. If a void title be relied upon to support a claim of right, its *nullity*, if not apparent on its face, may be shown in an action of trespass to try title, under the statutory plea of "not guilty," by any one having a right cognizable at law or in equity, whether the right were acquired prior to its issuance or subsequent thereto. Pasch. Dig., art. 5307; Mason *v.* Russell's Heirs, 1 Tex., 726, 728; De Leon *v.* White, 9 Tex., 603; Goode *v.* McQueen's Heirs, 3 Tex., 249; Edwards *v.* Davis, 3 Tex., 321; Harlan *v.* Haynie, 9 Tex., 462; Hollinsworth *v.* Holhousen, 17 Tex., 43; Ragsdale *v.* Gohlke, 36 Tex., 287; Dalby *v.* Booth, 16 Tex., 563; Rivers *v.* Foote, 11 Tex., 669, 670; Hunt *v.* Turner, 9 Tex., 387; Punderson *v.* Love, 3 Tex., 62; Mayer *v.* Ramsey, 46 Tex., 376; Burleson *v.* McGehee,

15 Tex., 379; Ryan *v.* Jackson, 11 Tex., 402; Johnson *v.* Byler, 38 Tex., 610; Watson *v.* Hewitt, 45 Tex., 474, 475; Ayres *v.* Duprey, 27 Tex., 604; Catlin *v.* Bennatt, 47 Tex., 172.

VIII. Proof of erasures, substitutions, additions, interlineations, constituting alterations of a material character in the protocol of the dispatch of the title, and not accounted for, if not sufficient to justify a finding of fraud and fabrication of title, was sufficient to cast a suspicion upon the instrument tendered calling for explanation. Escriche, public instrument, 8th, citing law 3, tit. 18, part 3; law 12, tit. 19, part 3; law 1, tit. 23, book 10, Nov. Rec.; law 10, tit. 19, part 3; law 5, tit. 23, book 10, Nov. Rec.; law 55, tit. 18, part 3; laws 10 and 11, tit. 23, book 10, Nov. Rec.; Parker *v.* Glover, 23 Tex., 471, 472; State *v.* Davis, MS. opinion, White, J., Tyler term, 1878, 5 Ct. App., 50; Harper *v.* Stroud, 41 Tex., 372; Galland *v.* Jackman, 26 Cal., 85; Prevost *v.* Gratz, 1 Peters (C. C. R.), 368; U. S. *v.* Linn, 1 How. (U. S. S. C.), 111, 112; Wood *v.* Steele, 6 Wall., 82; Herrick *v.* Malin, 22 Wend., 388, 393; Jackson *v.* Osborne, 2 Wend., 559; 1 Phill. Ev., 405; 1 Greenl. Ev., secs. 564, 568a.

IX. Possession of land for three, five, ten or any number of years under a void grant, will not bar the right of the state, nor make title by limitation; a void grant does not sever the land from the public domain, and confers no right. Mason *v.* Russell's Heirs, 1 Tex., 690, 699; De Leon *v.* White, 9 Tex., 603; Taylor *v.* Watkins, 26 Tex., 690, 699; Smith *v.* Power, 23 Tex., 33, 34; Kimbro *v.* Hamilton, 28 Tex., 565; Plumner *v.* Power, 29 Tex., 6, 7, 15, 16; Marsh *v.* Weir, 21 Tex., 110; Paschal *v.* Dangerfield, 37 Tex., 305; Moseley *v.* Lee, id., 479, 480; Trueheart *v.* Babcock, 49 Tex., 258.

MOORE, CHIEF JUSTICE.— This action, which is in the usual form of trespass to try title, was brought in the

court below April 17, 1876, by E. G. Hanrick, appellant, claiming title under an eleven league grant purporting to have been extended by Luke Lessassier, alcalde of the municipality of San Felipe de Austin, to Rafael de Aguirre, October 22, 1833, for the recovery of the lands involved in this suit, which are claimed adversely to him by the appellee A. M. Jackson, by virtue of certificate locations and surveys made in 1874.

On the trial a jury was waived, and the whole case, law and fact, was submitted to the court, by whom judgment was given for the defendant. And the plaintiff gave notice of, and now prosecutes his appeal.

As appellee made no objection to any of the links in appellant's chain of title, if the land in fact was granted to Aguirre, and as his (appellee's) title had its inception more than forty years after the extension of said grant by the alcalde, the merits of this controversy must depend on the fact whether this grant was a nullity, and the land covered by it was a part of the public domain, and subject to location, at the date of appellee's attempted appropriation of it. The determination of this question requires an examination of the objections of appellee to the validity of the grant.

These are:

1st. That it appears on the face of said grant that the officer by whom the grant purports to have been extended, acted without authority of law and against law in extending the title.

2d. The erasures, substitutions, additions and interlineations apparent on the alleged protocol in the general land office, cast suspicion of fraud and fabrication upon it, and, unexplained, should have excluded the land office copy of it, as evidence of a grant.

3d. The title relied on by appellant was void for want of a grantee, or, if it shows a grant to any one, it is a grant to Perfecto Valdez.

4th. If said grant was not void upon its face, the evidence before the court justified the conclusion that the officer by whom said title was extended acted without authority, and shows that the grant was issued in fraud, and therefore void.

· We shall not undertake an elaborate discussion of the questions suggested by these objections, or to follow counsel for the appelleé through the wide range of discussion in the very able and elaborate briefs and argument which they have presented to us in support of the propositions maintained by them, but shall, in the main, merely state our own conclusions.

1st. The title by Lessassier purports to have been extended in virtue of a concession in sale by the governor to Aguirre for eleven leagues of land, of date 14th day of June, 1830. The *testimonio* of this concession does not appear in or form part of the *expedientes* by the alcalde, as was customary and usual in the extending of such titles by this officer. But we know of no authority for saying that the title is void because he has not incorporated into it the evidence of the concession or sale. If there was, in fact, no concession, there could have been no legal grant by the alcalde. But whether there was a concession, and whether there was proper evidence of it presented to him by the interested party, was a matter for his official inquiry and determination. Whether he set forth in the title the evidence upon which he acted, or merely recited as a fact that a concession had been granted, and authority given him by the governor to extend the title, the presumption which is always indulged in favor of the validity of the acts of officers of a former government, warrants the conclusion that the officer acted in conformity with law and not in violation of it. Holliman *v.* Peebles, 1 Tex., 709; Hancock *v.* McKinney, 7 Tex., 384; Hatch *v.* Dunn, 11 Tex., 717, 718; Ruis *v.* Chambers, 15 Tex., 590.

But if it was necessary that the *expedientes* should exhibit or contain evidence of the grant of the concession, we are not prepared to hold that the protocol of this grant was in this particular defective. Sale in concession was made by the governor to Thomas de La Vega, Jose Maria de Aguirre and Rafael de Aguirre, for eleven leagues each, and unless triplicate *testimonios* of this concession (as to which there is no evidence) had been issued, there could not have been a *testimonio* incorporated in the extension of title to but one of these parties. But surely it could not be supposed that a title could only be extended to one of them. And it may very readily be inferred, without looking beyond this title, when the *testimonio* of this concession was presented; for the first title asked for upon it, the alcalde, as may be done in proper cases, gave a copy of it to the interested parties, to furnish authentic evidence of the rights conferred by it. And the incorporation of such authentic copy in the extension of title to the party to whom it was given, would, we think, be just as effectual as the original *testimonio*. At least where such course was pursued by the officer, who must be presumed to be acquainted with the proper discharge of his duties and the law under which he acted, no other conclusion can be legitimately entertained after the great lapse of time during which such act has stood unquestioned. Hancock *v.* McKinney, 7 Tex., 443; Hancock *v.* Horton, 11 Tex., 220.

2d. If the erasures and interlineations exhibited by the protocol of this title in the general land office were unexplained, this might be good ground for the exclusion of a copy of it in evidence. But the suspicion cast upon the instruments by these erasures, interlineations, etc., are removed by the title itself; for they all appear to be noted at the foot of each instrument, in which they occur above the signature of the officer and subscribing witnesses. Thompson *v.* Thompson, 12 Tex., 331.

3d. The fact that the name Perfecto Valdez appears in one instance in the latter part of the title where that of Rafael de Aguirre should have been written, does not warrant our holding that this was a grant to Perfecto Valdez, or that it is not in fact a grant to Aguirre. That it was not a grant to Valdez is manifest from every part of the instrument. The application is for the extension of title to Aguirre on a concession to him. The order of survey is for Aguirre. The land was surveyed for him; and the title itself purports to be made for the land thus surveyed. All these instruments form a part of the completed title, and are to be looked to and considered as a whole in passing upon and determining its legal effect. Doing so, there is not the slightest doubt but that Valdez's name is found in this instrument by mistake, where that of de Aguirre should have been written. And notwithstanding this mistake, it must be held that the title to the land was, in fact, extended to Aguirre. The fact that the commissioner, or his clerk, who prepared the paper for signature by the commissioner, may have by erasures and interlineations made applicable to this grant a paper commenced and intended for a grant to Valdez, does not detract from its validity as a grant to Aguirre, if in truth intended for and executed to him. Clay v. Holbert, 16 Tex., 204; Hancock v. McKinney, 9 Tex., 445; Helm v. Handly, Littell (Ky.), 219; Budd v. Brooks, 3 Gill (Ind.), 239; Shep. Touch., 74.

But it is said if this grant is not void upon its face, it is shown by extraneous testimony to have been extended by the officer from whom it emanates, without authority, in violation of law, and in fraud. That a grant may be shown to be void by proof that the officer had no authority to make such grant, or that the law did not warrant it, is beyond question. But if such grant is authorized by law, and may be legally issued by the officer from whom it emanates, we are not prepared to admit that it

may be attacked for fraud not appearing on the face of the grant, except by the government or some one having a pre-existing equity, unless the right to do so is expressly conferred on the party attacking it by law.

The ground upon which it is claimed that this grant is void for want of authority of the officer by whom it was extended, is in part the same as that heretofore adverted to, viz.: there was no sufficient evidence to prove the sale in concession of the land by the governor. We think, however, that the testimony before the court on this point establishes beyond controversy the existence and validity of such a concession as recited in the extension of title.

It is, however, urged with much more force, that while there was a concession of eleven sitios of land to the grantee, this concession had been fully satisfied by the extension of the title upon it for other lands prior to the date of the present grant. And therefore the extension of this title, purporting to be in satisfaction of the same concession, must be regarded as extended without authority, and as a fraudulent attempt to appropriate doubly the quantity of land to which the grantee was legally entitled.

The evidence before the court shows that Samuel May Williams, the attorney in fact of all the parties named in the concession in which this title had its inception, made two applications in behalf of Rafael de Aguirre for the grant of eleven leagues of land, each based alone on this concession; that all the preliminary steps were taken on each application, and in one a grant was extended to Aguirre for land on the Brazos river on the 4th day of October, 1833, while that for the land now in controversy was not consummated into a final grant until the 22d day of the same month and year. Appellee insists that by the extension of title for the land upon the Brazos, the authority of the officer to make a grant to the interested

party was exhausted, and all subsequent acts by him were null and void. But in our opinion the facts do not warrant this conclusion.

The alcalde, by the order, was clothed with authority to extend title to the interested party, and must determine how and when he had done so. Certainly it is not a necessary conclusion from the facts in this case, that the first of these grants was recognized or accepted by the party interested, as a grant of the land sold him by the governor. It is not shown that a *testimonio* ever issued on this first title, that possession was ever taken or claimed of it by Aguirre, or anyone claiming under him, or that any government dues were ever paid upon it. It is entirely consistent with the facts, and borne out by subsequent occurrences, that the application for these two grants originated in a mistake or oversight of the attorney, Williams. That after the extension of the first of these titles, and before a *testimonio* of it had been issued, this mistake may have been made known to the officer and he then extended the second one. The testimony of the surveyor, Johnson, shows that the land for which the last of these titles issued was selected by the parties to whom in fact the concession seemed to have then belonged, though the land was not conveyed to them till some years afterwards. And the evidence shows that it has ever since been claimed to be the land to which Aguirre was entitled by his concession, and that it is the land which was granted to him, while that on the Brazos never has been thus claimed by him or anyone claiming under him.

A short time after the organization of the general land office under the republic, Williams, the agent of Aguirre, at whose instance these titles were issued, appeared before the commissioner and explained to his satisfaction that the first was issued through mistake, and the second one was the title in fact granted to and always claimed

by and for Aguirre, as is shown by the records of the general land office. Now, can we say that because the commissioner had barely signed this paper purporting to be a grant to Aguirre, but which did not convey the land which he had selected and desired, though the privilege of selection was given him, was mistaken in supposing he had authority to convey to him the land which he desired, and in fact had selected, and when the exercise of such power by the alcalde has never been questioned by individual act or official authority during the existence of the government under which he acted, and, notwithstanding his exercise of this authority, has now been tacitly or expressly recognized by legislative and official action of the republic and state of Texas for more than a generation? Certainly, in our opinion, it cannot now be questioned by a party having no pre-existing equitable claim or interest. As was said by Chief Justice Wheeler, in the case of Johnson v. Smith, 21 Tex., 722, in discussing a kindred question, there must be a time beyond which men's mouths are stopped to raise such objections against the acts of the officers of a former government, and certainly beyond which a conclusion of fraud may be deduced as an inference from them.

But while we admit that the want of power of an officer to make a grant may be shown, as has been often held, to invalidate such grant, we do not think appellee brings this case within this rule by proving, if such is the proper conclusion from the evidence, that Lessassier granted eleven sitios of land prior to the date of the title now in question. The want of authority of the officer which renders the title void is to be shown by the law, or that he attempts to exercise his authority beyond the territory over which he has jurisdiction, or something of like character, and not from proof of mere error of the officer in extending a title to one not in fact legally entitled, but whom he supposed to be. The alcalde was

an officer authorized to grant titles of this character. True, his authority did not justify him in extending to Aguirre title for more than eleven leagues of land. Nor should the board of land commissioners give more than one headright certificate to the same applicant, or the commissioner of the general land office issue a second patent on the same certificate; but to do so would be an improper exercise of authority rather than an act without authority. So we think the action of the alcalde, if unwarranted, was an erroneous exercise of authority instead of an act without authority.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 14, 1880.]