Burkett & Murphy v. M. D. Scarborough.

(Case No. 4849.)

1. Collateral proceeding.— Following previous decisions, the doctrine announced, that the action of a legally constituted board of land commissioners in 1838, deciding who were the heirs of a deceased party, who had been entitled under the law to land, and issuing to them a headright certificate, is conclusive of their right to it, on a collateral inquiry, whether the decision of the board was right or not. The security of property and the repose of society demand the consistent maintenance of the principle.

2. Same.— The issuance of a patent, based on such certificate, to those designated therein as heirs of the party entitled, must in like manner be held conclusive of the question of their heirship.

3. Same — Patent.— Such a patent, when issued, inured to the benefit of him to whom the original certificate and the land on which it was located were conveyed by the ancestor.

4. Copies.— A transfer of a land certificate, upon which was based the delivery of a patent to the land by the commissioner of the general land office, when found in the land office is an archive, and a certified copy thereof from that office is admissible in evidence.

5. Acknowledgment of deed by married woman.— See statement of case for an acknowledgment of a deed by a married woman in 1858 held insufficient.

Error from Milam.    Tried below before the Hon. W. E. Collard.

Suit against appellants, averring that plaintiff was seized on 21st June, 1881, of three hundred acres of land, a part of the one-third league patented to heirs of Mariana Moro, Jr., in Milam county, Texas; that defendants entered on the land and removed therefrom four hundred and thirty-two cords of wood belonging to plaintiff, of

the value of $1,000, for which, as well as $500 vindictive damages, he prayed judgment.

Defendants answer by plea of not guilty and general denial; denying that the cord-wood ever belonged to plaintiff; that if he ever purchased the land from which it was cut, that at the time of his purchase the wood was a chattel severed from the realty, made by the labor and skill of defendants under a claim of ownership of the land and trees into manufactured timber, and did not pass by deed of purchase to plaintiff; that defendants were in possession under a regular chain of title from the sovereignty of the soil; that plaintiff was a trespasser, and charged damages by way of rents and cutting timber, etc., by plaintiff, and prayed for plaintiff's pretended title to be removed as a cloud on defendants' title, and for their writ of possession, etc.; that if plaintiff was entitled to recover at all, he could only recover the value of the wood standing in the tree, and not in its manufactured state, etc.   To this cross-bill plaintiff filed plea of not guilty.  November 13, 1882, the case was submitted to the court upon both the law and the facts.   The court adjudged that the demurrer of defendants to plaintiff's bill be overruled, and that the plaintiff recover of the defendants the value of the four hundred and thirty-two cords of wood in the tree, to wit, at twenty cents per cord, equaling the sum of $86.40, and that defendants take nothing by their cross-bill of trespass to try title to the land, and that the plaintiff Scarborough recover all costs of suit.   Both parties filed motions for a new trial, and notice of appeal by each party.

The court found as a fact that the certificate for one-third league issued to the heirs of M. Moro, Jr., 29th March, 1839, and that the board of land commissioners who issued the certificate found as a fact that Mariana Moro, Sr., and his wife Maria Trinidad Moro, were his heirs.   Also that Moro, Sr., and his wife, by deed of confirmation, November 12, 1849, conveyed the land located by the certificate to Chevalier.   That Charles Chevalier paid the land office fees.

The recitals in the land certificate were: "This is to certify that Mariana Moro, Sr., and Mariana Trinidad Moro, heirs of Mariana Moro, Jr., have appeared before the board of land commissioners for the county of Nacogdoches, and proved," etc., certified copy of survey of land in Milam county by virtue of this certificate survey, made for Mariana Mora, of eight and one-third labors of land (same land described in patent), "it being the quantity of land which he is entitled to by virtue of certificate No. 485, issued, etc., surveyed December 21, 1839."

A deed was offered from Carmalita Chevano and Jose Chevano, her husband, dated in 1858, to which was a certificate of the officer that the parties "acknowledged to me that they executed the same, and said Carmalita Chevano, in private examination, separate and apart from her said husband, acknowledged that she executed the same freely, and without any fear or compulsion of her said husband; the parties before signing declared that they could not write their names, made their mark, etc.  In testimony whereof," etc.

*T. T. Gammage,* for plaintiff in error, cited Stone *v.* Brown, 54 Tex., 334, and cases therein cited; Sewell *v.* Lawrence, Austin term, 1882; Texas Law Reporter, vol. 1, No. 5, p. 410; Baker *v.* Coe, 20 Tex., 435; Howard *v.* Colquhoun, 28 Tex., 134.

On conclusiveness of recitals in certificate after lapse of time, Watrous *v.* McGrew, 16 Tex., 506; Stroud *v.* Springfield, 28 Tex., 649; Leland *v.* Wilson, 34 Tex., 90, 91.

*N. P. Garrett* and *Hefly & Wallace,* for defendants in error, cited Pasch. Dig., art. 4140; Mason *v.* McLaughlin, 16 Tex., 28; 1 Greenl. on Ev., 21, 23, 570; 2 Greenl., § 626; 2 McCord (S. C.), 226; 7 Cow., 95; 5 Johns., 348; 6 Johns., 168; 2 Kent's Com., 362, 363; 49 Miss., 237, 247.

WEST, ASSOCIATE JUSTICE.— The action of the board of land commissioners on the 29th day of March, 1838, deciding that Mariana Moro, Sr., and his wife were the heirs of Mariana Moro, Jr., and in issuing to them the headright third of a league certificate in question as such heirs, is conclusive of their right to it in this proceeding, whether such judgment was correct or not.

Many previous decisions of this court have been to the effect that after the very great lapse of time that has transpired since these early transactions took place, the action of these special tribunals is no longer open to inquiry in ordinary suits between individuals in which such questions may arise collaterally.  The security of property and the repose of society demand the consistent maintenance of this principle.  If it were departed from, no man could rely upon any ancient title.  Age and acquiescence, instead of giving strength and confidence to a title, would weaken it.  The law, in its principles and practice, is eminently conservative.  Rights that rest upon the past adjudications of early tribunals and officials must be upheld and respected.  Hardiman *v.* Herbert, 11 Tex., 661.

In Styles *v.* Gray, 10 Tex., 506, it was said:  "Where it is considered that the evidence of her (the applicant) having the requisite

qualifications to receive a headright had been. subjected to the judg-
ment and approval of the board of land ·commissioners of the
county and had by them been approved, and again examined and
approved by the traveling board, and finally approved by the
commissioner of the general land office, who, if he had any doubts,
was required by the statute to take the opinion of the attorney-
general, surely it is time that this subject should be put at rest."
These views have again and again been indorsed, emphasized and
illustrated by repeated decisions of this court.

In Johnston v. Smith, 21 Tex., 728, it is said: " The commissioner
who issued the grant was the exclusive judge of the merits and qual-
ifications of the applicant.   It was for him to determine whether he
possessed the qualifications requisite to entitle him to the bounty of
the government, and it is well settled that his decision upon that
subject is final, and will not be revised by this court.   The issue of
the grant .precludes inquiry upon that subject.   15 Tex., 590; 11
Tex., 708, 717.   Thus in Styles v. Gray, 10 Tex., 503, where it was
proposed to impeach the grant because the grantee " was never a
married woman, a widow or the head of a family," this court held
that the evidence was rightly refused.   Babb v. Carroll, 21 Tex.,
767; Bowmer v. Hicks, 22 Tex., 155; Bradshaw v. Smith, 53 Tex.,
474; Todd v. Fisher, 26 Tex., 243; Lindsay v. Jaffray, 55 Tex., 631;
Howard v. Colquhoun, 28 Tex., 134; Palmer v. Curtner, 55 Tex.,
67; Walters v. Jewett, 28 Tex., 201; Hanrick v. Jackson, 55 Tex.,
32; McPhail v. Burris, 42 Tex., 145.

The patent which issued was based on this certificate, and the
heirs of Mariana Moro, Jr., referred to in it, must be taken to be
the persons who are decided to be such heirs by the issuance of the
certificate to them upon which the patent is founded, and without
which it could have no existence.

The patent, when issued, inured to the benefit of Chas. Cheva-
lier, to whom the certificate and the land located and surveyed by
virtue of it had been long before conveyed by Mariana Moro, Sr.,
and his wife.   Upon its issuance the legal title passed to Chevalier
and his heirs.   Merriweather v. Kennard, 41 Tex., 282; Pasch. Dig.,
art. 4288 (a) and note 978 (a) and authorities there referred to.

The appellees show a chain of title from the heirs of Chevalier
to themselves.   The certified copy of the transfer from Mariana
Moro, Sr., and his wife to Chevalier, acting upon which the patent
was delivered to Chevalier or his agent, was an archive of the gen-
eral land office, and a certified copy from that office was admissible
in evidence.   R. S., arts. 57, 3808.

· It thus appearing that the plaintiffs in error have the superior title to the land, it would be proper to reverse the judgment, and here render a judgment in their favor. As, however, it is possible that upon another trial the defendant in error may be able, either by proof of possession or in some other manner, to show a stronger and better right to the land in suit than he has yet done, the case will be reversed to give him an opportunity to do so.

In the view we have taken of the case, it becomes unnecessary to pass upon the right of the defendant in error to damages resulting from the removal of the four hundred and thirty-two cords of wood that were cut down and corded on the land before he purchased from H. L. Moffitt.

It may be proper to say that if his deed from Moffitt, which is not set out in the record, is only an ordinary warranty deed for the land, it would seem that the timber that has already been severed from the soil and manufactured into cord-wood, before its purchase by defendant in error, would not pass to him by such a deed as a part of the realty. On this point, however, it is not necessary now to decide.

The deed from Carmelita Chevano and her husband, Jose Chevano, is defective in not showing that the instrument was sufficiently explained to the wife by the officer taking the acknowledgment. Nor was she asked whether she desired to retract the deed. There are also other defects in the acknowledgment. It was properly excluded.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 29, 1883.]