M. A. C. WILSON v. CHAS. DILLINGHAM, RECEIVER OF HOUSTON AND TEXAS CENTRAL RAILWAY.

Decided November 18, 1896.

**Location and Survey—Railway Reservation—Designation of Boundaries in General Land Office.**

The Commissioner of the General Land Office, in accordance with Act of May 2, 1873 (Special Laws, 1873, p. 324), designated upon the map in use in that office the 100th meridian west from Greenwich, the eastern boundary of the Texas & Pacific Railway reservation, and thereafter recognized the boundary so designated in issuing titles. A location of a certificate, not entitled to location within such reservation during its continuance, was made east of the line so designated. Such location and patent thereon entitled its owner to recover the land though it should be shown to be in fact west of the true 100th meridian. The Act in question having conferred upon the Commissioner the power to so designate and fix the boundaries of the reservations, his action in the matter was conclusive.

APPEAL from the District Court of Taylor County. Tried below before Hon. T. H. CONNER.

The suit was in form of trespass to try title, and was brought by appellee, Dillingham, as receiver of the Houston & Texas Central Railway, to recover the land in controversy. The suit resolved itself into one of boundary, both parties holding patents which conflicted, and the right to recover depending on the validity of plaintiff's location, which was prior in time, but was claimed to have been void because made within the limits of the Texas & Pacific reservation. Plaintiff had judgment and defendant appealed.

*Z. T. Fulmore, Fred Cockrell* and *J. E. Cockrell,* for appellant.— The court having found that the land in controversy was west of the 100th meridian and within the eighty-mile Texas & Pacific Railway reservation, and that same was surveyed and located within said reservation, and that no patent had issued to the Houston & Texas Central Railway, through whom appellee claims, at the time of the passage of the validating Act of 1879, and the court having further found that prior to said act the McKenzie survey had in fact been patented, should

have held as a matter of law, that appellee's survey, patent, and title were void, and that appellant's title was validated by the Act of 1879, and therefore she should recover the land in controversy; and the court erred in not rendering judgment accordingly, instead of rendering judgment for appellee. Acts 1873, ch. 108, p. 318; Acts 1879, Special Session, pp. 20, 21.

If any presumption could be indulged in favor of the regularity of the acts of the Land Commissioner in making said "designation" on his maps and as to the time when he made same, it was not a presumption of law but a presumption of fact and subject to contradiction, and the court erred in holding that it was a conclusive presumption that could not be disputed by appellant. Broom's Leg. Max., 105; Rice on Ev., vol. 1, secs. 29 and 30; Greenl., Ev., sec. 44.

The land in controversy being in fact within the reservation created by the Legislature, appellee in order to acquire title must show that he was misled by the acts of the State officials in incorrectly designating the reservation on the maps, and must show that he surveyed the land within the reservation believing same was without by reason of the incorrect designation, setting up in effect an estoppel against the State, and in order to do this successfully he must have shown: (1) that the survey was made after the designation and in reliance thereon; and (2) he must have shown this by the evidence of the locator or surveyor who made the location; and (3) until the absence of that character of evidence was accounted for he was not entitled to rely on presumption as a basis for estoppel. Railway v. Railway, 109 U. S., 329; Rice on Ev., vol. 2, 710, 711, 729, sec. 311; Greenl., Ev., sec. 44.

If in fact the Land Commissioner made such designation of the 100th meridian on the maps of the Land Office as apparently left the land in controversy without the reservation, and therefore apparently subject to location, such designation was erroneously made, and was a mistake by the commissioner; and the land being in fact within the reservation and not subject to location, appellee can claim no rights by reason of said mistake of the commissioner, unless he shows that in fact he was misled by the mistake, and, induced thereby, located the land in controversy, believing the same to be in fact without the reservation; and the burden was on appellee to affirmatively prove by the locator, surveyor, or by other competent evidence, that he was so misled; and the court's presumption that the designation was regularly made and prior to plaintiff's survey does not authorize the further presumption from that presumption that appellee's survey was made in reliance on the designation, and the court erred in so holding. U. S. v. Ross, 92 U. S., 283.

Any attempted designation of the 100th meridian on the maps by the commissioner was unauthorized and void, because no data or field notes were ever returned to or filed in the Land Office by which same could be properly designated, and the court erred in giving effect to such designation. Story on Agency, secs. 17, 18, 126, et seq.

*Franklin & Cobbs*, for appellee.—The location and survey of Survey Number 167 of block Number 64 for the Houston & Texas Central Railway Company, in Taylor County, sued for, having been made prior to appellant's survey and having been made outside of the reservation of the Texas & Pacific Railway Company, as the same was designated by the Commissioner ªof the General Land Office, upon the maps of the General Land Office, was a prior valid appropriation of the land and the judgment of the court was supported both by the law and by the evidence. Sec. 7 of Act, May 2d, 1873, Special Laws, p. 324; Hancock v. McKinney, 7 Texas, 444; Jenkins v. Chambers, 9 Texas, 167; Styles v. Gray, 10 Texas, 504; Ruis v. Chambers, 15 Texas, 586; Herndon v. Robertson, 15 Texas, 599; Johnston v. Smith, 21 Texas, 730; Smith v. Walton, 82 Texas, 549, Burkett v. Scarborough, 59 Texas, 495; U. S. v. Land Co., 148 U. S., 31; Van Wyck v. Knevals, 106 U. S., 360; Railway v. State, 81 Texas, 77; U. S. v. Railway, 142 U. S., 615; U. S. v. Railway, 148 U. S., 562; Morgan v. State, 12 S. W. Rep., 244.

KEY, ASSOCIATE JUSTICE.—The trial court filed the following conclusions of fact and law:

"1.    This is a suit in trespass to try title, filed September 18, 1889, transferred to Austin and then re-transferred to this court. The petition is in the usual form, and the defendant interposes a plea of not guilty, except as noted in open court at the request of counsel on the docket, which will appear in the judgment of the court. It is agreed by counsel that no advantage is to be taken by reason of the failure of the petition to set up the exact conflict and that plaintiff's petition is sufficient for the purposes of suit and proof.

"2.    Plaintiff offered in evidence a file made for the Houston & Texas Central Railway Company, which was properly filed in the Bexar Land District on the 28th day of July, 1872, to survey certain land hereinafter described, by virtue of Certificates numbers from 40/4997 to 40/5036, inclusive, from the beginning line on the west of the Colorado and Clear Fork of the Brazos in Taylor County, as follows, to-wit: Beginning at the southeast corner of John Trussell's one-half league near the Clear Fork of the Brazos and on the line of Travis District; thence west to Trussell's southwest corner; thence northerly with his line, passing his northwest corner and continuing to the Clear Fork; thence with the Clear Fork and the line of the Young District to the west line of the county; thence south to or opposite to the M. C. Zuniski survey; thence eastward to and with Zuniski to R. Martinez's northeast corner; thence southeast with Martinez's, C. Colrick, Ed. Taylor and Jas. Jeffree's east line to David Harrison; thence northeast and northwest with the lines of Harrison, E. Isias, N. Gwatney, Thos. Lindsey, W. F. Smith, F. Brewer and W. S. Henry to the northeast corner of the said Henry's league; thence southeast and southwest with Henry, Jas. Walker, Thos. Lindsey and Elisha Isias to the L. Forsyth

league and with its north and northeast lines to the line of the county; thence east with county line of Taylor and Runnels to the John Forbes survey; thence north with Forbes, C. M. Jackson, W. F. Sparks, Robt. Triplett, John Kincade, to the northwest corner of the latter; thence with Kincade and Triplett to Smith's league, and with its west and north lines to the northeast corner on the line between the Bexar and Travis district; thence northwest with said line to beginning. The file was renewed by plaintiff on the 28th day of July, 1873.

"Plaintiff then introduced the certificate, being file number 5468 of Bexar script in the General Land Office, and being certificate No. 36/3993, by virtue of which plaintiff's survey of the land described in plaintiff's petition was made. The certificate was filed in the General Land Office Nov. 20, 1873.

"Plaintiff introduced field-notes of survey number 167, made by virtue of said certificate No. 36/3993, being a survey of 640 acres by virtue of said certificate, and which survey bears date of June, 1873, and being file number 5468, Bexar scrip in the Land Office of the State of Texas, and filed in said file in the General Land Office on the 20th day of November, 1873. The field-notes described the land as described in plaintiff's petition and being Survey 167 in Block number 64 of the Houston & Texas Central Railway Company's block of surveys in Taylor County.

"Plaintiff introduced in evidence a patent to the Houston & Texas Central Railway Company, describing said land as described in plaintiff's petition, which patent was dated on the 25th day of June, 1881.

"Plaintiff further.introduced the field-notes of 168 in Block 164 and Survey 164 in Block 64 and survey 169 in Block 64, all Houston & Texas Central Railway Company surveys, and the field-notes of the Wm. S. Henry survey, to show the connection of plaintiff's survey and defendant's survey with each other, which established that the defendant's survey conflicted with the southern part of Survey 167, 431 acres of land. The evidence further showed that defendant's claim of title to the John McKenzie one-third of the league, which McKenzie league was surveyed by the same surveyor who surveyed plaintiff's land in June, 1873, and that it was made subsequent to plaintiff's survey and was returned and filed in the General Land Office on the 28th day of November, 1873. Plaintiff's survey 167 was made on the ground and defendant's survey was made by calculation and calling for the boundary line of the Houston & Texas Central surveys referred to above. The John McKenzie survey was dated June, 1873, and was returned to and filed in the General Land Office on the 26th day of November, 1873, and was patented on the 29th day of September, 1874.

"It is conceded that plaintiff had title to Survey No. 167, Block 64, and defendant title to the John McKenzie one-third of the league.

"Defendant introduced evidence of witnesses to establish that the 100th meridian of longitude west from Greenwich or 23rd degree of longitude west from Washington to be east of the boundary line of the

McKenzie survey and survey 167. The testimony of the witnesses was based upon calculations made by them, such as from data forwarded through a Congressman to a surveyor here, showing the longitude of Fort Phantom Hill and Fort Chadbourne, no lines on the ground having been run from these points, or actual measurement made upon the ground, but established the position of the 100th meridian by calculation, no observation being made by solar instrument, by astronomical observations, by witnesses with reference to the plaintiff's survey or the McKenzie survey.

"The defendant also introduced Allen Buell, the government officer in charge of the weather bureau at Abilene, to show that data had been forwarded to him from Washington showing the longitude and latitude in which Abilene is situated. The data furnished him shows at one time Abilene to be at 99-45, again at 99-38, and recently at 99-40 degrees of longitude west of Greenwich, and that his predecessor made a bench mark on Pine street in Abilene along the line of the longitude of 99-40, and also stated that the latitude at Abilene was 32-13. Witness did not know who made the data or anything about it, except that a lieutenant, several years since, had visited Abilene and established the longitude of Abilene at 90-40 west, and it had been so recognized and accepted in his department since; did not know anything of its accuracy, but all witnesses except Buell stated that from general reputation and general report the 100th meridian was east of the surveys sued for by plaintiff as its position is now recognized. To all of this testimony plaintiff excepted, but from the foregoing facts and other facts introduced in evidence it satisfactorily appears to the mind of the court that the true position of the 100th meridian is east of the surveys sued for by plaintiff, from $2\frac{1}{2}$ to 3 miles east and south of the center line of the Memphis & El Paso reservation, about 22 miles, and I so find as a fact. I further find as a matter of fact that the 100th meridian west of Greenwich and 23d meridian west of Washington was delineated on the map dated August 30, 1859, in use in the Land Office in 1873, and that the same is delineated on said map in accordance with Special Act, chapter 18, section 7, dated May 2, 1873, which directs the Commissioner of the General Land Office to designate on the maps in his office the reservation from the 23d meridian west of Washington to the Rio Grande river, and that the following endorsement was made and marked on said map in red ink, to-wit: 'East boundary of the 80 mile reservation of the Texas & Pacific Railroad Company, Act of the Legislature approved May 22, 1873.' That that designation has remained upon said maps in the Land Office ever since, and that the same has never been changed, and that the western line of 167, block 64, was in 1873 $2\frac{81}{100}$ miles east of the meridian as delineated on the maps then in use in the Land Office, which was intended to be the eastern line of the 80-mile reserve of the Texas & Pacific Railway Company, to comply with section 7, art. 18, of the said law passed on May 2, 1873, and that said designation was recognized as the proper designation in the

Land Office of the State of Texas until long after plaintiff's survey and patent, which I find to be prior to plaintiff's survey.

"The exact date of designation of the 100th meridian on the map of 1859 in use in 1873 does not appear from the evidence, and the finding of the court that it was so designated prior to plaintiff's survey is based alone on the facts herein stated and the presumption from the facts that survey was in fact made by the district surveyor, that the field notes were duly forwarded to and filed in the General Land Office and endorsed as appears herein, and that thereafter patent was duly issued by virtue of such survey, and the presumption of the regularity of official acts.

"I find that there have been several changes in the position of the meridian line on the maps in use in the General Land Office. From May 1873, to June 18, 1879, it was represented to be $1\frac{15}{100}$ miles west of the west line of Taylor County; on the maps in use from June 18, 1879, to December, 1883, it was delineated as $2\frac{26}{100}$ miles west of the west line of Taylor County, and on the map now in use it was recently laid down and represented as $3\frac{36}{100}$ miles east of the west line of Taylor County. The first change was made on the map in use from 1879 to 1883, and the last change was within the last 12 months, but there has never been filed any data in the Land Office of the State of Texas or anything to show the true position of the 100th meridian as it actually is.

"I further find that the designation of the 100th meridian with reference to the 80 mile reserve with reference to the Texas & Pacific Reservation has never been changed, and is recognized in the Land Office in the same place it was when placed there with reference to surveys, and the Land Office has since the designation passed all surveys made on the eastern line of said designation as correct, and have continually issued patents for such surveys when otherwise correct.

"3 It is understand between the parties and was agreed in open court that all special laws pertaining to the Memphis & El Paso Reservation, and especially to the Act of May 2, 1873, creating the Texas & Pacific 80 mile reserve, are to be treated and considered as if the same was described at length herein, and it is agreed that the appellate courts may read from the original acts the same as if they were described at length herein.

"*Conclusions of Law.*—1. Upon the foregoing facts I conclude as a question of law that the plaintiff has the prior survey and is entitled to recover the land sued for as prayed in his petition.

"2. Under the facts and under the law, I conclude that the Commissioner of the General Land Office designated the true position of the eastern boundary line of the 80 mile reserve on the maps of the Land Office when the same became a law in 1873, and the action of the commissioner in so designating the same fixed the eastern boundary line, and having acted under the law, whether the same was designated mathematically correct or not, can not be called in question by defend-

ant, and the action of the commissioner in so designating the same is final, and the designation so made is west of plaintiff's survey, and therefore plaintiff is entitled to recover.

"3. I conclude as a matter of law that the true position of the meridian line as now established cannot affect the right of the plaintiff, as the duty was imposed by the Commissioner of the Land Office to designate the eastern boundary line of the reservation on the maps, and, having been so designated, the reservation is fixed, so far, at least, as plaintiff and defendant are concerned, without reference to where the true meridian is in fact.

"4. I conclude from the evidence that plaintiff received no benefit by virtue of the file made by it prior to the survey, and that when plaintiff surveyed its land by virtue of the land certificate it was in law an abandonment of whatever rights plaintiff had to locate any certificates described in the file upon the land sued for. Plaintiff's rights depend upon its certificate, survey and patent.

"5. I therefore conclude from the foregoing that plaintiff is entitled to a judgment for the land sued for and for costs, and judgment will be entered in accordance herewith."

*Opinion.*—We adopt the foregoing conclusions, both of fact and law, and affirm the judgment.

Section 7 of the Act of the Legislature creating and continuing the reservations referred to made it the duty of the Commissioner of the General Land Office to designate such reservations upon the maps of his office. Special Laws, 1873, p. 324. It was doubtless the purpose of the Legislature, in requiring these designations to be made upon the maps, to definitely fix the outer limits of the reservations; and having conferred upon the Commissioner of the General Land Office the power to so designate and fix the boundaries of the reservations, his action in the matter was and is conclusive. Hancock v. McKinney, 7 Texas, 444; Jenkins v. Chambers, 9 Texas, 167; Styles v. Gray, 10 Texas, 504; Johnston v. Smith, 21 Texas, 730; Burkett v. Scarborough, 59 Texas, 495; Smith v. Walton, 82 Texas, 549.

*Affirmed.*